## PIKE *v.* THOMAS.

### Opinion delivered July 9, 1898.

1. ADMINISTRATOR—CONTRACT FOR LEGAL SERVICES—COMPENSATION.— Sand. & H. Dig., § 217, providing the compensation to be paid to attorneys for the prosecution of suits, applies to those claims which are collectible by the method provided for the collection of ordinary debts in the courts, and not to claims against the United States, which can be collected only through congress and the court of claims.   (Page 442.)

2. SAME—POWER TO BIND ESTATE.—While an administrator, as a rule, cannot enlarge the liability of the estate he represents by his contracts, yet where services have been rendered by an attorney in performance of his contract with an administrator, which are of value to the estate, and the administrator is insolvent, an action will lie in equity to enforce payment for such services out of the assets of the estate.   (Page 443.)

Appeal from Clark Circuit Court in Chancery.

RUFUS D. HEARN, Judge.

*Dodge & Johnson* and *J. H. Crawford*, for appellant.

An attorney has a lien upon the amount he recovers, to the extent of the fee for which he has contracted.   15 How. 415; 91 U. S. 253; 130 U. S. 395; 36 Ark. 604; 42 Ark. 402; 33 Ark. 234, 235; 38 Ark. 385.   A plea to the jurisdiction of the court of equity can not be raised, for the first time, upon appeal.   15 How. 415; 1 Dan. Ch. Pr. 555; 143 U. S. 93; 150 U. S. 515; Sand. & H. Dig., §§ 5615, 5617, 5618; 37 Ark. 185; 26 Ark. 54; 52 Ark. 411; 32 Ark. 562; 31 Ark. 411.   It was

the duty and the right of the administrator to employ an attorney; and since he had no funds in his hands with which to pay such attorney, he had a right to make the fee a charge upon the amount of the recovery. 73 N. Y. 131; 6 N. Y. 567; 63 N. Y. 645; 8 Hun, 4; 38 Ark. 139; 4 Pa. St. 150; 6 Fla. 257; 110 U. S. 42; 50 Fed. 666; 35 Ark. 247; 61 Ark. 410. A constructive trust exists in favor of the attorney. 2 Story, Eq. Jur. § 964; 1 Perry, Trusts, §§ 13, 166, 235; 1 Lewin, Trusts, § 13; 1 Pomeroy, Eq. Jur. § 155; Bishp. Eq. 118; 2 Pomeroy, Eq. Jur. § 627; 42 Ark. 195; 1 Perry, Trusts, 195.

*John E. Bradley*, for appellee.

The claim was a chose in action in the hands of the administrator, and, as such, part of the estate. Sand. & H. Dig., § 57; 4 Ark. 173. The amount of the fee is governed by Sand. & H. Dig., § 217. The claim against the estate was disallowed in an action at law (62 Ark. 223), and is now *res judicata*. 1 Am. & Eng. Enc. Law, 825.

BATTLE, J. Yvon Pike, as administrator of the estate of L. H. Pike, deceased, brought an action against C. L. Thomas, in his individual capacity, and as administrator of the estate of Louis Thomas, deceased. He alleged in his complaint that his intestate, Luther H. Pike, in his lifetime, entered into the following contract with C. L. Thomas, as administrator of Louis Thomas, deceased:

"Whereas, I, Charles L. Thomas, as administrator of the estates, respectively, of Louis Thomas, deceased, and H. H. Carter, deceased, of Arkadelphia, in the county of Clark, in the state of Arkansas, have employed Luther H. Pike, attorney and counselor, of Washington, D. C., to take charge of and prosecute to its final determination, in such lawful manner as he may deem best for my interests, the certain claims against the United States for $2,625 and $866.50, respectively, that were presented to the commissioners of claims, under the act of congress of March 3, 1871,—the one on behalf of the estate of said Louis Thomas, the other by said H. H. Carter,—and were disallowed by it; said attorney to defray the further prosecution of said claims out of his own proper means, without reclamation therefor. Now, therefore, I do hereby agree, in

consideration thereof, to pay to him a sum of money equal to 50 per centum of the amounts that may be recovered on said claims, the payment of which is hereby made a lien upon the said claims, and upon any drafts, money or evidence of indebtedness which may be paid or issued thereon. In witness whereof, I have hereunto set my hand and seal this 28th day of July, A. D. 1886.

"[Seal.]                    .                    CHARLES L. THOMAS.

"Witnesses:

"J. P. HART,

"A. M. CROW."

He further alleged that his intestate had performed his part of the contract, and recovered on the claim of C. L. Thomas, as administrator of Louis Thomas, deceased, the sum of $1,338; that this sum was paid to the defendant on the second day of December, 1892, by the United States, without passing through the hands of Luther H. Pike, deceased, or his administrator; and that the same still remained in the hands of the defendant, as administrator; and that he had a lien on the same for the services rendered by his intestate; and asked for the enforcement of the same.

The defendant, C. L. Thomas, as administrator of Louis Thomas, deceased, answered, and admitted the execution of the contract, the performance by Luther H. Pike, in his lifetime, of his part, the recovery of the $1,338, the receipt of the same by himself, and that the same was still in his possession, none of it having been paid out. He admitted that the estate of Thomas was still unadministered; and alleged as a defense that the contract was illegal, and was not binding upon him as administrator.

The deaths of Louis Thomas and Luther H. Pike are admitted; and the fiduciary capacity of Yvon Pike and C. L. Thomas is not disputed. It was admitted that, at the time the contract sued on was entered into, or since, no assets of any kind whatever, except the funds in controversy, belonged to the estate of Thomas; "that congress appropriated the money to pay the $1,338, and ordered it to be paid directly to the defendant, as administrator, and it was so paid and received by defendant, without its passing through the hands of the attor-

ney, L. H. Pike;" and that no valid order was ever made by any court of record directing the administrator of Thomas to pay L. H. Pike any sum for his services.

Luther H. Pike, in his lifetime, testified that he was a practicing attorney in the city of Washington, in the District of Columbia, and for many years had been prosecuting claims before congress, the court of claims, the executive departments, and United States commissioners. He explained the course necessary for him to take in order to collect the defendant's claim, as follows: "Congress, by act of March 4, 1871, created a commission of three members, generally known and designated as the 'Southern Claim Commission,' whose jurisdiction was to investigate the claims of persons in those states that had been declared in insurrection, who claimed they had been loyal to the government of the United States during the war of 1861–5, and had furnished or had taken from them stores and supplies for the use of the army of the United States; and to report to congress for its action the result of the investigation." Under the act of congress of March 3, 1883 (known as the "Bowman Act,") "the claimant had to go to congress, and get his claim referred to the court of claims. This was accomplished by a bill and petition prepared and presented by the attorney of the claimant being referred to the proper committee of either the senate or house of representatives, and by the attorney obtaining the order of the committee sending the claim to the court of claims. The first step in the court of claims was the preparation and presentation of a printed petition and copies for the claimant. The next was the taking of new and additional testimony. That done, the attorney prepared a brief for the trial of the question of loyalty, that fact being made jurisdictional. This brief consisted of all the evidence on loyalty, and the attorney's comments or arguments upon the same. Upon the attorney for the defense filing his brief on loyalty, that question was argued and submitted to the court, though, by agreement, this question was generally submitted without argument. If the finding of the court was in favor of loyalty, then the attorney prepared a brief upon the merits. This consisted of a request for findings of facts, and all the evidence upon the property furnished or taken, when, where, by

whom, and its value. * * * When the government's attorney filed his brief on the merits, the case was argued and submitted; and, upon the court filing its findings of fact favorably, the attorney secured from the clerk's office a certified copy of it, filed the same with the committee that sent the case to the court of claims, thereby again bringing the claim before congress for appropriation of the money to pay the amount allowed by the court of claims. But, as the court's finding was not a judgment, but merely advisory to congress, and as congress had reserved the right to further investigate, the attorney had to attend to the reference of the claim to a subcommittee and the securing of a favorable report, and then work to secure the desired appropriation by congress."

As to the compensation received by attorneys for such services he says: "The rate of amount of compensation depends, in the first place, upon the amount and time of its payment. It is not worth while to speak of a retainer in cash, with balance during or at the conclusion of the prosecution of the claim. I am not aware of any such cases, and if there were any such the number is so small as not to create a rule."

"Section 823 of the United States Revised Statutes authorizing contracts for fees contingent upon success, the contracts have been almost universally of that character, either for $33\frac{1}{3}$ per cent., if the claimant paid current expenses of the prosecution, or 50 per cent. if the attorney paid them. The two principal considerations upon which such rates were established and stand are: (a) Uncertainty as to the length of time the attorney may have to be engaged in the prosecution of the claim, and the amount of labor and the time he may have to invest in it. * * * (b) Uncertainty as to the amount that may be recovered, there being the possibility of the amounts claimed being cut down to such a small figure as to make the attorney's percentage not fairly remunerative for his investment of time, labor and expenses paid in money."

He further testified that he undertook the collection of defendant's claim for $2,625, upon the terms stated in the contract sued on, it having been previously investigated and disallowed by the Southern Claims Commission, and the defendant

having no money to defray the expenses of the prosecution; that he prosecuted it under the Bowman Act; and that he performed all the acts which he testified was necessary to be done in order to collect such claims, and was engaged three years in so doing, and expended over $175 in payment of the expenses of the prosecution. The facts to which he testified are undisputed.

Upon this evidence and the pleadings, the circuit court refused to grant any relief against the administrator of Thomas, or the fund in question, but rendered a judgment against C. L. Thomas, in his individual capacity, for the sum of $882.87, it being one-half of the $1,338 collected and six per cent. per annum interest thereon from the 2d day of December, 1892, the day on which the $1,338 were paid, to the date of the judgment; and the plaintiff appealed.

When Luther H. Pike undertook to collect the claim of the administrator of Thomas against the United States, there were no assets belonging to the estate except that claim. The question was, should the estate lose the entire claim, or pay one half of the amount collected thereon for the collection of the amount that should be recovered? The administrator wisely decided to pay the one half. $1,338 were collected. Pike's administrator demands one-half of this amount. He is entitled to it. His intestate earned it by valuable services. His demand is eminently just, and should have been promptly paid by the administrator of Thomas, and the latter, had he done so, should have been allowed a credit for it, by the probate court, in his account with the estate of his intestate.

It is true that section 217 of Sandels & Hill's Digest provides: "When it shall become necessary, in the opinion of the court, for any executor or administrator to employ an attorney to prosecute any suit brought by or against such executor or administrator, the attorney so employed shall receive, as a compensation for his services, eight per centum on all sums less than three hundred dollars and on all sums over three hundred and less than eight hundred dollars, four per centum, and on all sums over eight hundred, two and a half per centum." But this section has application to those claims which can be collected, if collectible, by the method provided for the collec-

tion of ordinary debts in the courts, and not to the claims against the United States, which can be collected only through congress and the court of claims, as was the claim of the administrator of Thomas. *Turner* v. *Tapscot*, 30 Ark. 320. The compensation fixed by the statute shows that the general assembly which enacted it did not have in mind any claim except ordinary debts, which, as a general rule, could be collected without any great expenditure of labor, time or money.

But we have repeatedly held that an administrator has no power to bind an estate by his contracts. In *Tucker* v. *Grace*, 61 Ark. 410, Judge Riddick, speaking for the court, said: "An administrator has no power to enlarge, by his contract, the liability of the estate he represents. Whether he contracts as an administrator or not, it is his own undertaking, and not that of the decedent, and he incurs a personal liability. An attorney employed by the administrator of an estate has no claim against the estate, although his services may have inured to the benefit of the estate. He must look for compensation to the administrator who employed him." The same rule was laid down in *Pike* v. *Thomas*, 62 Ark. 223, which was a suit by Luther H. Pike against C. L. Thomas, as administrator of Louis Thomas, deceased, upon the same contract upon which this action is based.

While an administrator, as a general rule, cannot enlarge the liability of the estate he represents by his contracts, there are exceptions to this rule. Where services have been rendered by an attorney in performance of his contract with an administrator, which are of value to the estate, and the administrator is insolvent, an action will lie in equity to enforce the payment for such services out of the assets of the estate. Equity grants relief in such cases upon the ground that the administrator has a charge against the estate for the disbursements made by him, which are reasonable in amount, and for services which he had the right to contract for in the proper discharge of the duties imposed upon him, although a reimbursement of the same would not leave a surplus sufficient to pay the creditors of the deceased. Inasmuch as the remedy against the administrator is of no value on account of his insolvency, equity transfers to the attorney the right to collect out of the assets of the estate the amount

due him for his services which the administrator would have had, had he paid it with his own money. *New* v. *Nicoll*, 73 N. Y. 127; *Clapp* v. *Clapp*, 44 Hun, 451; 2 Woerner, Administration, § 356.

In this case it is not alleged in the pleadings nor shown by the evidence that the administrator is insolvent. Unless this be shown, it does not appear that appellant is entitled to any relief in equity against the estate; for, if the administrator can be forced to pay the amount due him, he has an adequate remedy at law, and no right to subrogation to the rights of the administrator against the estate.

The decree of the circuit court is therefore, affirmed, without prejudice to the right of appellant to institute an action in equity to be subrogated to the right of the administrator against the estate, in the manner indicated, as to one-half of the $1,338, the amount due on the contract sued on, the estate not being liable for interest on account of the default of its administrator in the payment of the same.

BUNN, C. J. This is a suit in equity based on the contract set forth in the opinion of the court. Under this contract, Pike prosecuted said claim in congress, and through the court of claims, and finally had it allowed, to the extent of $1,338, for the estate of Louis Thomas, deceased, of which he claimed as his fee one-half, to-wit: the sum of $669. By some rule of law, the whole amount recovered was required to be and was paid, not to Pike, the attorney of record of Charles L. Thomas, as administrator, but to the said Charles L. Thomas himself, as administrator of Louis Thomas, deceased, and said administrator still holds the same.

There is no sort of question as to the justness of the claim, and, more than this, the fund would evidently have been lost to the estate had it not been for the services of Pike, or of some other person performing similar services as he did. It also appears that, under the contract, Pike has spent a considerable sum of his own money, some of which he was able to recall, but some he made no memorandum of, not thinking that it would be important to preserve evidence of the same.

Thomas, the administrator, having become possessed of the

sum aforesaid, and as aforesaid, refused to pay Pike his share of it as his fee under the contract, refused also to petition the probate court of the proper county to order its payment out of said fund or the assets of the estate. Pike then filed his petition in the probate court, setting up the facts, and asked an order upon the administrator to pay over to him the said sum of $669. Upon the hearing, the probate court adjudged that the petitioner, Pike, was entitled to the sum of $57.45,—doubtless an amount he had expended out of his own funds in his efforts to realize on the claim of the estate against the government. Pike appealed to the circuit court, when the judgment of the probate court was sustained, and the additional sum of $69.96, was allowed; and from the judgment of the circuit court he appealed to this court, where the cause was reversed and remanded, without prejudice, on the ground that the probate court had no jurisdiction to hear and determine an adversary suit between a claimant and the administrator, on a contract between them. The reversal without prejudice was suggestive of a proper remedy for the petitioner in another jurisdiction; and so, when the cause was remanded, he brought his suit in equity against the administrator, as such, to enforce his attorney's lien on the fund, and also against the administrator individually; and the decree was against the administrator individually, but for the estate on the question of the¦ lien, and Pike appealed again to this court.

The decision of *Pike* v. *Thomas*, 62 Ark. 223, *supra*, was based on the decision of *Tucker* v. *Grace*, 61 Ark. 410,—that particular part of it which says: "It is proper practice, where an administrator refuses to pay for such services, for the attorney to bring suit against him individually, and not in his representative capacity" (meaning to bring suit before a court having jurisdiction over controversies between individuals); and this doctrine grew out of the rule announced in the books to the effect, as therein stated, that "an attorney employed by the administrator of an estate has no claim against the estate, although his services may have inured to the benefit of the estate. He must look for compensation to the administrator who employed him." Granting, for the sake of argument at least, that the authorities are correct in sustaining that theory, yet

cases in which it is at all applicable are common-law cases, or cases at least wherein, by suits against the administrators as such, the estates are sought to be made liable generally; for in such suits the claims are necessarily against the assets of the estates generally. Such were the cases of *Pike* v. *Thomas* and *Tucker* v. *Grace*, above referred to, and relied upon by the court in its decision herein. It is unnecessary to refer further to *Pike* v. *Thomas*, since that is but this case, as it appeared here on a former appeal, and because the point decided therein is not, and cannot, be controverted here. Nor need there be any controversy over the real meaning of *Tucker* v. *Grace*, for it only meant, after all, that suits against administrators for services rendered in behalf of estates at their instance should be against them individually in courts having common-law jurisdiction. Take the cases upon which that decision is based, and which are cited in support of it, and the distinction I am seeking to point out is clearly made. Thus *Underwood* v. *Milligan*, 10 Ark. 254, was a case where Underwood, for attention to and care of cattle belonging to the estate, sought to have his claim allowed and classed against the estate, over the objection of the administrator. Of course, he suffered defeat in the end. And so it will be found that not a single one of the cases therein cited and relied on have any element of equitable jurisdiction, but all involve simple claims at law.

The plaintiff, Pike, in the case at bar, claimed a lien on the fund he recovered for the estate, not only by the express terms of his contract with the defendant, but by law, which presumably they endeavored to embody in their contract. Pike does not seek to bind the estate generally, on the contract of the administrator. On the contrary, he seeks to recover not the estate's property, not a debt against the estate, to be settled out of its assets, but he seeks to recover from the administrator that which is his own, and which the latter wrongfully withholds from him, at the instance of general creditors, who seek to enjoy the benefits resulting from plaintiff's labors honestly expended, and at the same time to deprive him of any remuneration for the same, by a supposed rule which leaves him remediless. But it is said in the decision of the court

that, had the plaintiff alleged and proved the insolvency of the administrator, the decree would have been in his favor. That idea is involved in some of the decisions cited, and, for the purposes of the cited cases, is doubtless correct; but it will strike the most casual observer that to say in one breath that an administrator cannot bind the estate in his charge by his contracts with third persons, and then in the next breath to say that the estate will be bound if it so happens that the administrator is or becomes insolvent, is a little peculiar. Why an estate, not otherwise bound, 'should be made to pay, because the administrator of it cannot or ought not finally to be made to pay, is to my mind making the estate bound at all events; for it is also said that where an administrator performs his contracts with third parties, and they are for the benefit of the estate, and pays what is due on them, the probate court will make an allowance out of the assets of the estate to indemnify him, and that, too, when he is not insolvent. What authority has the probate court to make such an allowance in the one case, and an equity court to subject the funds of the estate to answer the default of the administrator in the other, if by his contract the administrator cannot bind the estate? The truth is, we come back to the point from which we started. The administrator cannot bind the estate in law, but he may do so in equity. If that be true, insolvency of the administrator is not the basis of recovery,—at least not the only ground upon which a recovery may be had,—but a fixing of a lien is also a matter of equitable jurisdiction, and that is just what is asserted here.

The idea that one who produces a thing has a lien upon it for the value of his labor expended thereon in bringing it into existence now pervades the law everywhere, and in most instances has been made the subject of statutory enactment, and so it is that the law provides that where an attorney saves a property to his client, he has a lien upon it for his services. Whether his services have or have not been rendered by authority of law in any case is a subject of inquiry, and ought to be determined on principles of equity when the law falls short in its provisions.

The result of the decision of the court in this case is that, on the cause being remanded, the controversy will be renewed

by a complaint in which the insolvency of the administrator will be alleged and shown, if such be the fact; in which case the claimant will succeed in his suit. If, however, the administrator is not insolvent, he will be made to pay the judgment already against him; and he will immediately seek indemnity out of the assets in his hands, and, according to the rule, the probate court will afford him the relief out of the general assets. In other words, the estate will pay the amount at last, unless plaintiff is estopped by some act of his own before the matter has been carried that far. The question then is, why this circumlocution? Why this useless and expensive procedure, when the same end might be answered by a simple decree to the effect that, as the complainant has saved so much to the estate, and his demand for services in that behalf is reasonable, that much of the fund will be paid over to him without further trouble and delay. I think such should be the decree in this case.