GEORGE A. KING AND WILLIAM B. KING, *Appellants*, v. H. S. PONS AS ADMINISTRATOR OF THE ESTATE OF MANETTE MARSONS, DECEASED, *Appellee*.

## Opinion filed April 10, 1919.

## Petition for Rehearing denied May 9, 1919.

1   A contract, between a person holding a claim against the United States Government and his attorney whereby it is undertaken to give the latter a lien upon any check, draft or certificate or other medium of payment issued in settlement of the claim as security for the fee agreed to be paid, is void in so far as it undertakes to create a lien upon the check, draft, certificate or other medium of payment, but the agreement to pay for the services to be rendered is valid although it gives the attorney no interest or share in the particular money paid over by the government.

2   One who has a legal claim against an administrator of an estate for services rendered which have proved beneficial to the estate and the administrator personally is insolvent and unable to respond to a judgment in favor of the creditor, the latter may be subrogated in equity to the administrator's right to reimburse himself out of the estate.

3.   An Act of Congress making an appropriation of money in settlement of a claim against the United States Government which provides that no part of the amount appropriated in excess of twenty per centum shall be paid or delivered to any agent or attorney on account of services rendered in connection with the claim does not affect the validity of a contract made between the claimant's administrator and an attorney for services to be rendered in prosecuting the claim, nor does it make unlawful the payment by the administrator after the money comes into his hands of the agreed compensation nor, in case of the administrator's insolvency and inability to respond to a personal judgment for the services rendered, does it deprive the attorney creditor of his right

to be subrogated in equity to the administrator's right to reimburse himself out of the estate.

An Appeal from the Circuit Court for Escambia County; A. G. Campbell, Judge.

Order reversed.

*Blount & Blount & Carter* and *C. F. Consaul,* for Appellants;

*Watson & Pasco,* for Appellee.

ELLIS, J.—This is a suit in equity to subject the estate of Manette Marsons in the hands of the present administrator to the payment of a debt for services rendered by the complainant to a former administrator of the estate for the benefit of the estate.

Manette Marsons had a claim against the United States Government for supplies furnished to the military forces of the United States during the war between the States. She died in the year 1883, owing no debts whatever, and before presenting the claim for allowance.

The bill alleges that sixteen years later her heirs employed the complainants, who are attorneys at law, to prosecut the claim in any court and before any officer or department of the United States, or before Congress, and agreed to pay them for their services an amount equal to fifty per cent of the amount which might be allowed on said claim, and to pay all costs arising in the prosecution of the same, and consenting to a "lien upon any check, draft, certificate or other medium of payment issued in settlement of said claim in favor of the complainants as security for the fee so agreed to be paid."

It is alleged that the claim was prosecuted by the complainants in the name of the heirs until the year 1901, when Talesfor D. Quiggles was appointed administrator of the estate. In 1903 the Court of Claims made a finding in favor of the administrator in the sum of four thousand three hundred dollars. Quiggles, as administrator, continued the employment of the complainants upon the same terms.

In 1915 Congress made an appropriation of four thousand three hundred dollars to Quiggles as administrator to pay the claim, but Quiggles at that time had died intestate, his estate was insolvent, and he could not respond to a judgment against him in favor of the complainants for the amount due them.

After the appropriation was made and Talesfor D. Quiggles had died, H. S. Pons was appointed administrator, and as the bill alleges he also continued the employment of the appellants upon the same terms as the former administrator, and he has paid the complainants eight hundred and sixty dollars on account of their compensation, which is twenty per centum of the amount appropriated by Congress, but has declined to pay the balance.

It is not alleged that Pons is insolvent. Now section four of the act making the appropriation to Talesfor D. Quiggles to pay the claim of the estate of Manette Marsons is as follows:

"That no part of the amount of any item appropriated in this bill in excess of twenty per centum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys on account of services rendered or advances made in connection with said claim.

"It shall be unlawful for any agent or agents, attorney or attorneys to exact, collect, withhold or receive any sum which in the aggregate exceeds twenty per centum of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000."

The prayer of the bill is that the defendant Pons as administrator be required to pay to the complainants the sum of twelve hundred and ninety dollars, or such other sum as the court may find to be due to them for compensation for their services rendered, with interest, and that the amount so decreed to be paid be allowed to the defendant as a credit in stating and settling his accounts as administrator; that the complainants be decreed to have a *lien* upon the sum in defendant's hands belonging to the estate for whatever amount the court may find to be due to the complainants, and that they be subrogated to any rights the defendant has, or which Talesfor D. Quiggles might have had to pay complainants the balance due them for the services rendered, and that such sum be allowed them as credits in settlement of their accounts with the estate.

There was a demurrer to the bill, for want of equity; that it showed no cause of action against the defendant; that the complainants' remedy, if they have any, is at law; that it appears that a judgment against the defendant will afford the complainants a complete remedy and the bill shows that complainants have no cause of action either against the defendant or the estate represented by

him, and that the Act of Congress making the appropriation is valid.

The demurrer was sustained, and from that order the complainants appealed.

So much of the contract between the complainants and the heirs of Manette Marsons or with the two administrators of the estate as provided for a lien in favor of complainants upon any check, draft, certificate or other medium of payment issued by the United States Government in settlement of the claim of the heirs of Manette Marsons or her estate against the government was void upon its face under Section 3477 of the Revised Statutes of the United States which declares null and void all transfers and assignments made of any claim upon the United States or of any part or share thereof or interest therein, whether absolute or conditional, and whatever may be the consideration thereof, and all powers of attorney, order or other authorities for receiving payment of any such claim or of any part or share thereof, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof.

In the case of Nutt v. Knut, 200 U. S. 13, 26, Sup. Ct. Rep. 216, the Supreme Court of the United States held that an agreement in all respects similar to the one invoked in this case, upon the particular point of the creation of a lien upon the claim or any check, draft, money or evidence of indebtedness issued thereon, was null and void upon its face.  See, also, National Bank of Commrce v. Downie, 218 U. S. 345, 31 Sup. Ct. Rep. 89.  But it does not follow that the agreement to pay a sum equal to fifty per cent of the amount of the claim for the serv-

ices is void, but in so far as the agreement seeks to create a lien upon the claim, or check, draft, certificate or other medium of payment issued in settlement of the claim, it is void, because having been made before the allowance of the claim the agreement sought to give the complainants an interest or share in the claim itself and was contrary to the statute.

If in this case the basis of equity jurisdiction is the existence of a lien in favor of the complainants upon the money appropriated by Congress in payment of the Marsons claim against the government, and this is merely an attempt to follow the fund into the hands of the administrator and charge it with the lien attempted to be created by the compact, then the demurrer was properly sustained, because as no lien existed upon the fund to secure payment for the services rendered by complainants the court will not declare one to exist in violation of the Act of Congress above referred to and the Act appropriating money in payment of the claim. The complainants' remedy would be at law upon the contract, or upon a *quantum meruit* for the services rendered. The defense was not waived because the demurrer questioned the equity of the bill and pointed out that the protection afforded by Section 3477, Revised Statutes of the United States, was not waived by the Government and its officers because the act making the appropriation expressly limited the amount that should be paid to any attorney on account of services rendered in connection with the claim.

The Supreme Court of the United States has several times declared that the effect of Section 3477, Revised Statutes, was to protect the Government and its officers during the adjustment of claims, but that *after allow-*

*ance* the protection afforded by the statute may be *in voked* or *waived* as they in their judgment deem proper. This, in substance, is the language of Mr. Justice Pitney in McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. Rep. 543, in which the following cases were cited in support of the statement, *viz:* Goodman v. Niblack, 102 U. S. 556, 560; Bailey v. United States, 109 U. S. 432, 439; Hobbs v. McLean, 117 U. S. 567, 576; Freedman's Sav. & T. Co. v. Shepherd, 127 U. S. 494, 506; Price v. Forrest, 173 U. S. 410, 423. Attention was called by Mr. Justice Pitney to Nutt v. Knut, 200 U. S. 13, 26 Sup. Ct. Rep. 216. In that case Knut brought suit against Nutt as administrator of Hallie Nutt, deceased, in the Chancery Court of Mississippi. The suit was based upon a contract similar to the one which the appellants in this case made with the heirs of Manette Marsons. The plaintiff in the Knut case claiming as assignee under one Denver, with whom the contract was originally made. The petition asked that in the event the plaintiff was not entitled to compensation under the Denver contract that he be given judgment for such sum as his services were reasonably worth. The court of original jurisdiction held the contract to be violative of the United States statute, and that the court was of the further opinion that as the plaintiff procured personal solicitations to be made of members of Congress in behalf of the claim he was not entitled to the relief prayed, and dismissed the bill. The Supreme Court of Mississippi reversed the decree and adjudged the complainant to be entitled to recover 33 1/3 per cent (the amount provided by the contract) of the amount collected. The cause was remanded for an account to be taken and for an order directing the administrator to pay to Knut any balance of that per cent unpaid. This resulted in a decree being entered for the

complainant which was afterwards affirmed by the Supreme Court of Mississippi. The case came to the Supreme Court of the United States upon writ of error, and the decree was affirmed.

We understand the reasoning of Mr. Justice Harlan, who rendered the opinion of the court in that case, to be that while the contract created no lien upon the fund appropriated by Congress and was void in so far as it attempted to do so, the provision of the contract whereby it was agreed to pay the attorney a sum equal to 33 1/3 pr cent of the amount allowed on the claim was valid, but that it gave the attorney no interest or share in the particular money paid over by the Government. It only established an agreed basis for any settlement that might be made *after* the allowance and payment of the claim as to the attorney's compensation. "It simply created a legal obligation upon the part of the estate which if not recognized *after* the collection of the money, could not have been enforced by suit for the benefit of the attorney without doing violence to the statute or to the public policy established by its provisions."

The Supreme Court of the United States accepted the finding of the Supreme Court of Mississippi that the record did not establish a suit for lobbying services, and as there was no error of *law* as to any *question* which could be properly reviewed by the Supreme Court of the United States the decision of the Supreme Court of Mississippi was, as we said, affirmed.

As to the invalidity of the contract in so far as it undertook to create a lien in favor of the attorneys upon the particular fund paid by the Government in settle-

ment of the claim, see, also, National Bank of Commerce v. Downie, 218 U. S. 345, 31 Sup. Ct. Rep. 89.

It is apparent from the language of the Act of Congress making an appropriation of money in settlement of the Marsons' claim that the Government did not waive the protection afforded to it and its officers by Section 3477, General Statutes of the United States, and in so far as it may be considered as a refusal on the part of the Government to waive the protection secured to it by that section we deem it to be valid, but as the contract provided for the payment of a certain per cent of the amount collected as compensation for the services rendered by the attorneys, we think that it was valid and constituted a legal obligation which, if not recognized *after* the payment of the money, might be enforced by appropriate litigation.

The situation that existed, therefore, when this suit was instituted was one in which the complainants had a valid legal contract with the administrator of the estate of Manette Marsons whereby the complainants were to be paid a sum of money equal to 50 per cent of the amount collected on the claim as compensation for their services. This constituted a claim enforceable at law. It formed the basis of an action of which the courts of law and not of equity had complete jurisdiction. The complainants, however, contend that while primarily their claim is a legal one against the administrator of the estate personally and not against the estate, it is such an agreement as that being for the benefit of the estate of Manette Marsons the administrator would, after fulfilling the contract on his part by the payment to the complainants of the agreed compensation, be permitted under the law to deduct the amount so paid from any

money in his hands belonging to the estate and thus re-imburse himself on account of the amount so paid to the complainants, and that as the administrator is insolvent and unable to respond to a judgment in favor of the complainants upon the contract they have a right in equity to be substituted to the administrator's right to so reimburse himself out of the estate.

A number of authorities are cited in support of this position. It is a settled rule that a cause once properly in a court of equity for any purpose will ordinarily be retained for all purposes, even though the court is thereby called upon to determine legal rights that otherwise would not be within the range of its authority. See McGowan v. Parish, *supra;* Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Wiggins v. Williams, 36 Fla. 637, 18 South. Rep. 859; Donegan v. Baker & Holmes Co., 73 Fla. 241, 74 South. Rep. 202.

The contract in this case was originally made between A. R. Pons as guardian of the heirs of Manette Marsons, but upon the appointment of the administrator Talesfor D. Quiggles he continued the employment of the complainants upon the same terms. This the demurrer admits. This suit is against H. S. Pons as administrator, who is the successor of Talesfor D. Quiggles. H. S. Pons succeeded to all the powers and duties of his predecessor and took the estate subject to all the obligations incurred in relation thereto. "They are but successive trustees. If they take the trust and fund, they take them subject to all the legal obligations which may attach thereto." See Thompson v. Nowlin, 51 W. Va. 346, 41 S. E. Rep. 178.

In Weeks upon Attorneys at Law it is stated that: "A contract for services rendered by an attorney to an ad-

ministrator in recovering the estate or any part of it, would ordinarily be enforceable only against the admin-istrator personally.   But in case of fraud or insolvency of the administrator the attorney may resort to equity and be enabled to maintain his claim against the estate directly, provided he has acted in strict good faith." See Weeks on Attorneys at Law (2nd ed.), Sec. 346a, p. 707; Clopton v. Gholson, 53 Miss. 466; Pike v. Thomas, 65 Ark. 437, 47 S. W. Rep. 110.

Whether the basis of equity jurisdiction in this case is the insolvency of the administrator of the estate or his right to bind the estate in equity by contracting for serv-ices which when rendered and acecpted enhances the value of the estate and thus brings into existence a lien upon it for the value of the labor performed is of little consequence because the bill shows both conditions to ex-ist.   The contract was a valid one in so far as it fixed the amount of compensation to be paid for the servies, the elements of fraud or unreasonableness do not appear, the services were rendered and they were valuable and increased the value of the estate to the amount collected. The sum appropriated by Congress was paid over to the administrator.   The lien created by the service rendered by the attorneys rests upon the labor performed, the value of which may be evidenced by the terms of the con-tract as to the amount agreed to be paid.   Such a lien which is sought to be enforced here in nowise could have annoyed or affected the Government or its officers in ad-justing or paying the claim.

We think, therefore, that the bill was not without equity and the demurrer should have been overruled. So the order is reversed.

BROWNE, C. J., AND TAYLOR, J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J., *dissenting*.—This is a suit to enforce the terms of a contract transferring an interest in a claim against the United States, and not a suit to recover on a *quantum meruit* basis for services rendered, in which latter case a valid agreement as to the amount of compensation may be used as evidence of the value of the services; yet a contract may not defeat a lawful exercise of the powers of government. 219 U. S. 467; 12 Wall. 457. The nature of the suit is as stated, although equity jurisdiction is claimed on the ground of subrogation. Courts will not by indirection give effect to an invalid contract.

The contract sought to be enforced transfers an interest in a claim against the United States and is contrary to the provisions, to the purpose and to the policy of a prior Act of Congress (Sec. 3477, Revised Statutes), therefore the contract is not legally enforceable. The contract is also contrary to the terms of a later Act of Congress of March 4, 1915, which Act is not invalid since the Federal constitution does not prohibit Congress from violating the obligation of a contract when exercising a power conferred; and all contract and property rights are subject to the lawful exercise by Congress of the Federal authority. Freedom of contract is a qualified, not an absolute right. It implies absence of arbitrary restrain, not immunity from reasonable regulations. 219 U. S. 549.

The later Act obviously was intended to protect persons having claims against the United States from unreasonable or improvident contracts for the collection of

such claims, a purpose within the power of Congress. Emphasis to the policy of the former Act is given by the later Act, which is not palpably arbitrary and oppressive in its terms or in its application to the contract in this case. "Laws of the United States which shall be made in pursuance" of the Federal Constitution are part of "the supreme law of the land." This case is essetnially different from those in 200 U. S. 12 and 2237 U. S. 285. See · 157 U. S. 160; 161 U. S. 72.

WEST, J., concurs.