[Civ. No. 13607. Second Dist., Div. Three. July 9, 1943.]

C. J. LANDE, Appellant, v. GEORGE JURISICH, Respondent.

614

Joseph A. Zahradka, Jr., for Appellant.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, J. Albert Hutchinson, Deputy Attorney General, Cross and Brandt, R. H. Cross, Arthur H. Brandt, Alfred F. Breslauer, Francis L. Cross, Ralph H. Cross, Jr., and Alexander Sheriffs as Amici Curiae on Behalf of Appellant.

L. J. Styskal and Sarah B. Danning for Respondent.

SHAW, J. pro tem.—Plaintiff appeals from the judgment in an action for declaratory relief. He sought a declaration that a specific part of a contract set up in his complaint is invalid and therefore not binding upon him; the trial court declared it to be valid. The facts are not in dispute. The answer admitted all of the complaint except some conclusions of law, the parties stipulated to the facts so admitted and the court made findings accordingly.

The material facts are as follows. On October 15, 1940, the

plaintiff, to evidence a loan to him of $1,000 by defendant, made his promissory note to defendant for that sum, with ten percent interest, payable in installments of $50 and interest on the 15th day of each month until paid. When this action was brought two of these installments were delinquent and the defendant had, pursuant to the terms of the note, declared the entire amount of the note immediately due and payable. At the time of execution of, and as security for, this note, plaintiff executed and delivered to defendant a paper headed "ASSIGNMENT OF AND LIEN UPON WAGES AND OTHER COMPENSATION," which described the note, assigned to defendant all wages theretofore earned by plaintiff under his employment with a named employer and authorized defendant to collect those wages. This paper contained the following provision, which is the subject of this action: "The undersigned hereby agrees to pay the lender, his successors and assigns, the amount of the promissory note aforesaid in installments as above set forth, upon the terms and conditions contained in said promissory note, from and out of the amount or amounts hereafter to be earned by the undersigned as wages, commissions and other compensation for services in the employ of the employer above named, and as security for such payment, the undersigned hereby grants unto the lender, his successors and assigns, a lien upon said wages, commissions and other compensation, which lien shall be enforceable by an appropriate action in a Court of Equity, but only after default in the making of the installments aforesaid or any thereof." Plaintiff contends that so much of this provision as purports to grant to defendant a lien on plaintiff's unearned wages is void, whereas defendant claims it is valid and threatens to take legal proceedings against plaintiff and his employer to enforce the lien. We think plaintiff's contention must prevail.

Defendant rests his claim of validity on section 2883 of the Civil Code, which provides: "An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing, to the extent of such interest." In the absence of any other applicable statutory provision, there seems no doubt that section 2883 would be applicable to the present case and that

under it the agreement here in question would be valid. (*Cox* v. *Hughes,* (1909) 10 Cal.App. 553 [102 P. 956]; *Walker* v. *Rich,* (1926) 79 Cal.App. 139, 144 [249.P. 56].)

But in 1913 the Legislature enacted a statute regulating assignments of wages, adding it to the Civil Code as section 955 (Stats. 1913, p. 537). In 1937 this statute was removed from the Civil Code and placed in the Labor Code (Stats. 1937, p. 202), and at the same time was divided into five sections numbered from 300 to 304 inclusive. In 1941 these five sections were again combined into one, as section 300 of the Labor Code, and somewhat amended. (Stats. 1941, p. 1851.) Ever since its first enactment this statute has contained a provision, always the same in substance, upon which plaintiff relies to show the invalidity of the contractual provision here in question. Since such invalidity depends only upon the statute in force when the contract was made, in 1940, we quote the provision as it then stood, being section 303 of the Labor Code: ''No assignment of, or order for, wages or salary is valid, except for the necessities of life, unless at the time of the making thereof, such wages or salary have been earned. No assignment of, or order for, wages or salary made for the necessities of life, is valid except to the person furnishing such necessities directly, and then only for the amount needed to furnish such necessities.'' Defendant insists that the contract in question is not subject to this prohibition because it is not an assignment or order, but only ''grants . . . a lien.''

But this is a remedial statute, and as such it must be liberally construed. (*Reynolds* v. *Reynolds,* (1936) 14 Cal.App.2d 481, 484 [58 P.2d 660]; *Berg* v. *Standard Light Co. of Calif.,* (1928) 89 Cal.App. 542, 545 [265 P. 369]; *In re Makings,* (1927) 200 Cal. 474, 478 [253 P. 918].) As stated in *Reynolds* v. *Reynolds, supra,* referring to the first statute on this subject, Civil Code, section 955, ''The interpretation of the section under discussion does not so much depend upon the technical definition of the terms as upon the sense in which they were used by the Legislature.'' *In re Makings, supra,* quoted with approval the following passage from 23 Cal. Jur. 801: ''[A] remedial statute must be liberally construed, so as to effectuate its object and purpose. Although due regard will be given the language used, such an act will be construed, when its meaning is doubtful, so as to suppress the mischief at which it is directed, and to advance or extend

the remedy provided, and bring within the scope of the law every case which comes clearly within its spirit and policy." The companion sections of the Labor Code, all of which were originally adopted as parts of a single statute in section 955 of the Civil Code and are now in section 300 of the Labor Code, provide that no assignment of wages or salary is valid unless it is in writing and has the consent of the assignor's spouse, if the assignor is married, or of his parent or guardian if he is a minor, and that any power of attorney to collect wages or salary is revocable at any time. Taking the statute as a whole, it manifests a legislative intent to protect wage earners and salaried workers against the possibility that, either from improvidence or under the stress of immediate necessity, they may go too far in sacrificing the future to the needs or desires of the present and leave themselves and their families without future means of support. Evidently the Legislature had information, which is confirmed by such matters as come within judicial notice, that the evil thus to be guarded against was sufficiently prevalent to call for legislative action, and the remedy ought not to be defeated by judicial construction if that result can reasonably be avoided.

 While it is doubtless true that, in strict legal parlance, the mere imposing of a lien on wages to be earned in the future is not an assignment of them (6 C.J.S. 1045; *Estate of Beffa,* (1921) 54 Cal.App. 186, 189 [201 P. 616]), we see little difference in the incidence of the two on the future condition of the worker and his family. Defendant argues at great length that there is such a difference because the creditor who holds an assignment may collect the assignor's wages as soon as they become due, whereas one holding only a lien must resort to proceedings in court to enforce it. But defendant also suggests that while these proceedings were going on an injunction could and would be had to prevent payment of the wages to the debtor who created the lien, and obviously without such a remedy the lien might prove futile. Such legal proceedings, if the lien is valid, would at once stop payment to the worker, would eventually result in application of his wages to the debt, just as in case of an assignment, and would also impose on the worker costs and expenses of suit, which would not follow an assignment, thus leaving him and his family ultimately in worse condition than if he had made an assignment.

■ It seems to be defendant's idea that, because the lien he claims is of the class commonly called equitable liens, and could be enforced only in a court of equity—which would take cognizance of it only because of the lack of any other remedy—therefore some sort of equitable adjustment or compromise could and would be made in the enforcement of the lien whereby the wage earner would be allowed to keep and use for the support of himself and his family so much of his future earnings, when they become due, as might be necessary for that purpose, or at least that he would be allowed something toward that end, and the surplus only would be applied to the debt. No authority is cited in support of this theory and we have found none. The lien granted by the plaintiff, if valid, covers the whole of his future earnings, not merely a part thereof. We know of no rule of equity by which a court of equity, when called on to enforce a valid contract creating a lien on definite property, can except some part of that property from its decree of enforcement out of sympathy for the lienor or regard for the financial condition to which he might otherwise be reduced. On the contrary, the rule, as stated in 30 C.J.S. 411, is, "Where a contract has been voluntarily, understandingly, and fairly entered into, and is free from fraud, accident, mistake, or any other circumstance recognized as a ground for equitable relief, a court of equity must, when its jurisdiction is properly invoked, give full force and effect to such contract; it cannot ignore, disturb, or alter the rights created by it, or grant relief against their enforcement. . . . The mere fact that for one of the parties the contract was unwise or improvident, or that its enforcement is harsh, when it was so intended to be, does not alter the rule; . . ." A like statement of the rule is made in 10 Cal.Jur. 474, 475. (See, also, *Boyce* v. *Fisk,* (1895) 110 Cal. 107, 112 [42 P. 473].) "While a court of equity may exercise broad powers in applying equitable remedies, it may not create new substantive rights under the guise of doing equity." (*Rosenberg* v. *Lawrence,* (1938) 10 Cal.2d 590, 594, 595 [75 P.2d 1082].) The contract held by the defendant here is, therefore, as fully within the mischief at which the statute is aimed as is an assignment or any other form of agreement which deprives a wage earner of the use of his future wages.

■ The statute can be applied to it without greater liberality of construction than is permissible here, and we so

apply it. By using the terms "assignment" and "order" the Legislature obviously sought to reach every form of instrument which would result in the impounding of a wage earner's wages before he received them. While the agreement is not technically an assignment, it does, if valid, pass to defendant an interest in plaintiff's future wages which defendant did not have before and in a sense may be regarded as having transferred or "assigned" that interest to him. The term "order" has no fixed legal meaning; and since the agreement will result in an order of court for the payment of the wages to defendant to the extent of his lien, it may be regarded as an order, for the purposes of this statute.

Judicial precedent for such a construction of the statute appears in *Nutt* v. *Knut*, (1906) 200 U.S. 12 [26 S.Ct. 216, 50 L.Ed. 348]. That case arose under section 3477 of the U.S. Revised Statutes, which provided that "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim or of any part or share thereof, shall be absolutely null and void unless they are freely made . . . after the allowance of such a claim." The defendant there had a claim against the United States and engaged the plaintiff to assist in its prosecution, by a contract which made the payment of plaintiff's compensation therefor "a lien upon said claim." This part of the contract was held void, the court saying, at 200 U.S. 20: "In giving that lien from the outset, before the allowance of the claim, and before any services had been rendered by the attorney, the contract, in effect, gave him an interest or share in the claim itself . . . In effect or by its operation it transferred or assigned to the attorney, in advance of the allowance of the claim, such an interest as would secure the payment of the fee stipulated to be paid. All this was contrary to the statute; for its obvious purpose, in part, was to forbid anyone who was a stranger to the original transaction to come between the claimant and the government, prior to the allowance of a claim . . ." This case was followed and approved in *Calhoun* v. *Massie*, (1920) 253 U.S. 170, 175 [40 S.Ct. 474, 64 L.Ed. 843, 846], and *King* v. *Pons*, (1919) 77 Fla. 383 [81 So. 519]; and the same result was reached on a construction of the

same statute in the earlier case of *Manning* v. *Leighton*, (1892) 65 Vt. 84 [26 A. 258, 260, 24 L.R.A. 684, 690]. In *Trottier* v. *Foley*, (1920) 42 R.I. 422 [108 A. 498], it was held that a workman's agreement acknowledging receipt of a loan from his employer, "against which I pledge my wages until paid back" was an assignment of future wages within the terms of a statute making such assignments invalid against attacking creditors unless recorded and defining "assignment" to include "every instrument purporting to transfer an interest in or an authority to collect the future earnings of any person." The latter part of this definition is similar to the word "order" used in our statute.

The judgment is reversed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.