[Civ. No. 61902. Second Dist., Div. Four. Dec. 28, 1981.]

PASCAL & LUDWIG, INC., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
WATER RESOURCES et al., Defendants and Respondents.

COUNSEL

Monteleone & McCrory, G. Robert Hale and Patrick J. Duffy for Plaintiff and Appellant.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

OPINION

WEIL, J.*—Petitioner and appellant appeals from a judgment denying a writ of mandate that would have commanded respondents to offer petitioner the opportunity to arbitrate certain disputed claims that had arisen under a construction contract between appellant's predecessor and respondent. (Hereinafter appellant and its predecessor, Zurn Engineers, are collectively referred to as Contractor; respondent State of California ex rel. Department of Water Resources is referred to as State; and respondent Ronald B. Robie, as Director of the Department of Water Resources, is referred to as Director.)

---

*Assigned by the Chairperson of the Judicial Council.

### FACTUAL AND PROCEDURAL BACKGROUND

Preliminarily it should be noted that a review of the history of this protracted litigation, as described in *Zurn Engineers* v. *State of California* ex rel. *Dept. Water Resources* (1977) 69 Cal.App.3d 798 [138 Cal.Rptr. 478] (rehg. den.), is necessary to a full understanding of the issues here involved.

Pursuant to advertisement for bids under the State Contract Act, a written contract was entered into in 1964 between State and Contractor for the construction of the Grizzly Valley Dam project. State, acting through the Department of Water Resources, prepared the contract documents, including the plans and specifications and completed the work under the contract and said work was accepted by State.

During the construction of the dam, Contractor filed 27 claims for extra compensation with State. The contract contained provisions authorizing the State Engineer, or his designated representative, to decide disputes including claims for extra compensation between Contractor and State. Section 5(f) of the specifications provided in part: "... the Engineer shall decide all claims arising under and by virtue of the contract, and his decision shall be final and conclusive unless it is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith. The Engineer shall advise the Contractor of administrative procedures for the consideration and determination of claims, and the Contractor shall comply therewith...."

After exhausting administrative procedures afforded under the specification for the consideration and determination of Contractor's claims, the deputy director of the Department of Water Resources rendered engineer's final decision awarding $127,297.68 while denying the balance of the total claims that had aggregated $1,238,275.31.

Following rejection of its claims, Contractor in 1970 filed suit for breach of contract against State in Los Angeles Superior Court, action No. 978331 (hereinafter First Contractor Action). Contractor's complaint as amended alleged 12 causes of action for "extra" work. The trial court, disregarding the decision of the engineer, tried the case de novo and received original evidence bearing upon Contractor's claims for extras. After hearing 33 days of testimony and considering over 450 exhibits, the court found that State had made certain representations to

Contractor which were untrue and damaged Contractor, and rendered judgment accordingly in favor of Contractor on the first four causes of action in the aggregate sum of $896,245.89 plus interest thereon. The trial court rendered judgment in favor of State on the last eight causes of action.

Thereafter State appealed from the judgment in favor of Contractor on the first four causes of action but Contractor did not appeal from the judgment in favor of State on the last eight causes of action.

On May 17, 1977, the Court of Appeal rendered its decision in *Zurn Engineers* v. *State of California* ex rel. *Dept. Water Resources, supra*, 69 Cal.App.3d 798. The judgment in favor of State on the eight causes of action was affirmed; thereafter, the appellate court treated the case as if it originally had contained only the four causes of action on which State's appeal was based.

The contentions of the parties on appeal and the court's disposition of them were summarized as follows: "State makes several contentions, most of which need not be discussed in view of the conclusions which we reach. The one contention made by the State which requires reversal is that the primary issue before the trial court was whether or not there was substantial evidence to support the Engineer's decision, that there was in fact substantial evidence to support the Engineer's decision and, therefore, the trial court was not required or authorized to try the case de novo. For reasons hereafter stated we agree with State's contentions to that extent. However, we do not agree with State's conclusion based on that premise that the trial court was required to affirm the decision of the Engineer, because Contractor contends that in reaching his decision, Engineer violated Contractor's due process rights. For reasons hereafter stated, we agree with Contractor that Engineer in reaching his decision did violate Contractor's due process rights. However, we do not agree with Contractor's conclusion based on that premise that Engineer's decision was null and void and, therefore, the trial court had the authority and obligation to try the case de novo." (Fns. omitted.) (*Zurn Engineers* v. *State of California* ex rel. *Dept. Water Resources, supra*, at pp. 820-822.)

Based on the foregoing, the judgment as to the first four causes of action was reversed "with directions to the trial court to enter judgment ... directing the Engineer of the State or his designated representative

to reconsider the four claims of Contractor ... after, but only after, said engineer or his designated representative has fully advised Contractor and State, in writing in advance, of the testimony, oral statements and documentary evidence upon which Engineer ... intends to rely in reaching his decision; and thereafter to afford Contractor and State a reasonable opportunity to refute or supplement such testimony, oral statements and documentary evidence ...." (*Zurn*, at pp. 838-839.)

Pursuant to the appellate court's directions, the trial court on January 23, 1978, entered judgment remanding the matter to DWR's Engineer for further proceedings and a new decision on the four claims.

Meanwhile, following publication of the *Zurn* decision, the California Legislature in 1978 enacted section 1670 to the Civil Code (eff. Jan. 1, 1979), which provides: "Any dispute arising from a construction contract with a public agency, which contract contains a provision that one party to the contract or one party's agent or employee shall decide any disputes arising under that contract, shall be resolved by submitting the dispute to independent arbitration, if mutually agreeable, otherwise by litigation in a court of competent jurisdiction."

Following enactment of section 1670, the Governor of the State of California on December 8, 1978, issued Executive Order B50-78 relating to resolution of claims under state construction contracts. The executive order directs the three major state contracting agencies, including the Department of Water Resources, to include in all contracts bid after January 1, 1979, a prescribed provision for independent arbitration of disputes as authorized by Civil Code section 1670.

With respect to prior existing contracts, the executive order provides: "2. Effective January 1, 1979, the contracting state agencies shall offer the construction contractor the opportunity to arbitrate any dispute involving an existing contract awarded under the State Contract Act in which trial has not commenced pursuant to the procedures set forth herein. Such arbitration shall be in lieu of any *de novo* judicial determination of the dispute, but shall not preclude judicial review of the arbitration award as provided herein."

After the State Engineer again rejected Contractor's four remaining claims following reconsideration pursuant to First Contractor Action, on January 8, 1980, Contractor filed suit against State (action No.

309428 now pending in Los Angeles Superior Court) for breach of contract with respect to said claims (Second Contractor Action). Said suit was allegedly filed by Contractor "to protect its claims from the statute of limitations . . . ."

On April 8, 1980, Contractor requested State to offer Contractor arbitration of its claims pending in Second Contractor Action in accordance with said executive order. On April 18, 1980, respondents denied Contractor's request for arbitration. Contractor then commenced the instant action (Third Contractor Action) by filing a motion and petition for a peremptory writ of mandate to compel respondents to offer arbitration of the pending claims as Contractor contends respondents were directed to do by virtue of the provisions of Executive Order B50-78.

On September 12, 1980, the trial court entered its judgment denying Contractor's petition and motion for peremptory writ of mandate.

Following its original decision the trial court heard a motion to reconsider challenging its finding that Contractor had an adequate remedy at law. On September 12, 1980, that motion was denied. Notice of appeal was filed October 1, 1980.

On February 5, 1981, the Supreme Court decided *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165], which holds that in a contract of adhesion an arbitration provision that would designate as sole arbitrator either an affected contractual party or one with identical interest in the outcome of the dispute is unconscionable and unenforceable as a matter of state law and policy.

ISSUES ON APPEAL

1. Whether the trial court erred in either (a) determining that Executive Order B50-78 does not apply to petitioner's pending claims disputes, or (b) in finding that petitioner has an adequate remedy at law.

2. Whether the subsequent decision in *Graham, supra*, should change our determination of either of the two issues previously stated.

DISCUSSION

I

*The Demand for Arbitration*

Analysis of Contractor's right, if any, to require appointment of arbitrators under the facts here stated must begin with an examination of the possible sources from which such right is arguably derived. These sources include (1) Executive Order B50-78, (2) Civil Code section 1670, and (3) the *Graham* case itself. For the reasons hereinafter discussed, we conclude that none of these can serve as the basis for the relief requested.

We begin by considering the interrelationship between the statute and the executive order. The statute poses two alternative methods of dealing with disputes arising from construction contracts with public agencies where the contract contains a provision that one party or its agent or employee shall decide any disputes arising thereunder. Such disputes "shall be resolved by submitting the dispute to independent arbitration, *if mutually agreeable*, otherwise by litigation in a court of competent jurisdiction." (Italics added.) (Civ. Code, § 1670.) Thus, absent mutual agreement to arbitrate, such disputes may not be arbitrated by a party or its interested agent but rather must be tried in court.

In Executive Order B50-78 the Governor has in effect ordered the state's Departments of General Services, Transportation and Water Resources (the latter being the department here involved) to consent to such arbitration by including provisions therefor in all contracts entered into under the State Contract Act for which bids are opened between January 1, 1979, and December 31, 1983. As to preexisting contracts the order provides that the State will agree to similar arbitration "involving an existing contract awarded under the State Contract Act *in which trial has not commenced . . . .*" (Italics added.)

■ Contractor contends that the case at bar involves a dispute "in which trial has not commenced" so that the appropriate state official has an administrative duty to permit arbitration upon proper demand. As authority for this proposition, Contractor pursues the following reasoning: the construction and interpretation of the subject executive order should be governed by the same rules which apply to the construction and interpretation of statutes. (See *Cal. Drive-In Restaurant*

*Assn.* v. *Clark* (1943) 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028]); "In the interpretation of particular words, phrases or clauses in a statute, the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision containing such words, phrases or clauses. [Citation.]" (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 133 [74 Cal.Rptr. 294, 449 P.2d 230]); and, that when words are interpreted they "must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) Further that a remedial statute must be liberally construed and, when its meaning is doubtful, will be construed to advance or extend the remedy provided (*Lande* v. *Jurisich* (1943) 59 Cal.App.2d 613 [139 P.2d 657]), and the fundamental statement that the objective sought to be achieved by a statute as well as the evil to be prevented is a prime consideration in its interpretation. (*Rock Creek etc. Dist.* v. *County of Calaveras* (1946) 29 Cal.2d 7, 9 [172 P.2d 863].) With none of these general rules do we disagree.

These rules cannot, however, serve as the springboard from which to take the quantum leap that the trial in the First Contractor Action was not a "trial" within the meaning of the executive order. The original suit was brought on 12 separate causes of action, each alleging a different breach of the same contract for which money damages were claimed. While it is true that the *Zurn* court reversed the trial court judgment in favor of Contractor on the first four causes of action because the trial court improperly admitted new evidence and tried the matter de novo, nevertheless the *Zurn* court affirmed that portion of the judgment deciding the last eight causes of action in favor of the State. Contractor chose not to appeal from that part of the judgment so it is clear that a trial both commenced and concluded as to a portion of Contractor's original claims. The net effect of the appellate decision was to send the case back to square one insofar as the first four causes of action were concerned for further consideration by DWR's Engineer under the new fair procedure guidelines established in the decision, but to result in a final judgment as to the remaining eight causes of action.

Contractor next argues that paragraph 2 of the executive order should be applicable in these proceedings because "trial has not commenced" in the Second Contractor Action. Since the executive order is remedial, it is argued, it must be construed liberally to advance or extend the remedy provided. (*Lande* v. *Jurisich, supra,* 59 Cal.App.2d

613.) This argument might be valid if in fact the First Contractor Action had not been tried and final judgment entered. We see nothing in the language of the executive order or the law that would support an interpretation ignoring the First Contractor Action.

■ Next Contractor argues that Civil Code section 1670 must apply to preexisting contracts, including the subject contract, because the remedy prescribed therein will be applied prospectively to enforce the substantive contractual rights and obligations of the parties as well as to effectuate the legislative purpose, citing *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 593-595 [97 Cal.Rptr. 30]. This argument is irrelevant to the case at bench. As noted above, Civil Code section 1670 prescribes *two* possible methods for settling such disputes—"submitting the dispute to independent arbitration, if *mutually agreeable*, otherwise by litigation in a court of competent jurisdiction." (Italics added.) In the absence of consent from the public agency (which consent is clearly lacking here) and which is not required under the executive order, Civil Code section 1670 cannot be construed to compel arbitration under these circumstances. It is therefore unnecessary to further discuss the questions as to whether the code section is applicable to cases where the contract or the dispute or both arose before the enactment of the statute (as they did in the instant case) nor whether retroactive application would or would not be proper.

Finally Contractor contends that the *Graham* decision mandates the appointment of an arbitrator in the instant case. We disagree.

In *Graham* the Supreme Court determined that certain agreements between a rock concert promoter and a musical group arbitration were, in the light of all the circumstances, contracts of adhesion, i.e., "... 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (28 Cal.3d at p. 817.)

The court went on to observe that while the adhesive character of a contract will not itself preclude enforcement, there were two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof.

"The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party

will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' [Citations.]" (Fns. omitted.) (*Id.* at p. 820.)

In considering the possible applicability of *Graham* to the case at bench, appellant points to the following statement and footnote in that opinion (*id.* at pp. 819-820): "Thus, a contract of adhesion is fully enforceable according to its terms [fn. omitted] (see *Meyers* v. *Guarantee Sav. & Loan Assn.* (1978) 79 Cal.App.3d 307, 312 ...; *Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 ...; *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 737 ...; *Neal* v. *State Farm Ins. Cos., supra,* 188 Cal.App.2d 690, 694) *unless certain other factors are present which, under established legal rules—legislative[17] or judicial—operate to render it otherwise.*" (Italics added.)

Footnote 17 states: "An example of legislative action is to be found in the recently enacted section 1670 of the Civil Code, which essentially renders unenforceable provisions in public-agency construction contracts appointing a party or his agent as arbitrator of disputes arising under the contract. (See also, Ins. Code, § 11580.2, subd. (f).)"

For reasons hereinafter discussed we do not deem it necessary to decide the scope and bearing of that footnote in the instant case.

After finding the order compelling arbitration under an unconscionable and unenforceable contract provision to be error, the *Graham* court fashioned a remedy deemed appropriate to the case before it: "In light of the strong public policy of this State in favor of resolving disputes by arbitration, however, we do not believe that the parties herein should for this reason be precluded from availing themselves of nonjudicial means of settling their differences. The parties have indeed agreed to arbitrate, but in so doing they have named as sole and exclusive arbitrator an entity which we cannot permit to serve in that broad capacity. In these circumstances we do not believe that the parties should now be precluded from attempting to agree on an arbitrator who is not subject to the disabilities we have discussed. We therefore conclude that upon remand the trial court should afford the parties a reasonable opportunity to agree on a suitable arbitrator and, failing such agreement, the

court should on petition of either party appoint the arbitrator. (See and cf. Code Civ. Proc., § 1281.6.) In the absence of an agreement or petition to appoint, the court should proceed to a judicial determination of the controversy." (*Id.* at p. 831.)

The *Graham* court did not create a new remedy of arbitration; rather it held that the arbitration procedure as set forth under the existing contract was unenforceable. In attempting to fashion relief, it sought to make a truly neutral arbitration available to the parties if they wanted it; if not, judicial determination of the controversy was specified as the alternative.

In *Hope v. Superior Court* (1981) 122 Cal.App.3d 147, 155 [175 Cal.Rptr. 851], the court followed *Graham* in reversing a trial court order compelling arbitration of claims between two account executives and a former securities brokerage firm employer. However, the *Hope* court declined to afford the remedy fashioned in *Graham* because neither party requested such procedure and also because the case involved both arbitrable and nonarbitrable issues.

We do not read either *Graham* or *Hope* as empowering the court to compel arbitration where at least one party has rejected that alternative. Both cases involved express but unenforceable arbitration agreements where previous orders granting petitions to arbitrate were, in fact, reversed. By so holding, however, we do not mean to suggest that the effects of *Graham* may not be felt elsewhere in the continuing proceedings between Contractor and State, as discussed in the following section.

## II

### *Adequacy of Remedy at Law*

Petitioner claims the trial court erred in determining that petitioner has an adequate remedy at law. We disagree.

The adequacy of petitioner's legal remedy is to be found not in the First Contractor Action but in the Second Contractor Action, as hereinafter discussed.

It is necessary to examine briefly the status of the three actions and/ or proceedings initiated by Contractor heretofore:

### 1. *First Contractor Action*

This is Los Angeles County Superior Court case No. C 978331, filed in 1970, seeking money damages on 12 separate causes of action each arising from Contractor's construction contract with State. The trial court found for Contractor on four causes of action and for State on eight causes of action and entered judgment accordingly. State appealed; Contractor did not. In *Zurn, supra,* 69 Cal.App.3d 798, the appellate court found the trial court had erred in trying the matter de novo rather than looking solely to see whether substantial evidence supported the findings of the State's Engineer. However, the trial court also erred in not first deciding the contention of Contractor that it had not been accorded minimum due process in handling of its claims. Accordingly, *Zurn* reversed the trial court as to the first four causes of action, which were remanded to the State Engineer for further determination in accordance with principles set out in the opinion, and affirmed that portion of the judgment dealing with the fifth through the twelfth causes of action. That judgment has long since become final.

### 2. *Second Contractor Action*

This is Los Angeles County Superior Court case No. C 309428, filed January 1980. Here Contractor seeks money damages on the same four counts that were initially rejected by the State Engineer, next erroneously granted by the trial court judge and subsequently again rejected by the State Engineer upon the hearing. State has filed an answer and the matter is at issue.

### 3. *Third Contractor Action*

This is Los Angeles County Superior Court case No. C 331649 filed July 1980. This proceeding is the instant case at bench in which Contractor sought a peremptory writ of mandate under Code of Civil Procedure section 1088 commanding respondents to offer petitioner the opportunity to arbitrate the claims now pending in the Second Contractor Action in accordance with Executive Order B50-78. It is from the judgment denying this petition that this appeal was filed.

If the trial court believed that Contractor's remedy at law lay in reopening the First Contractor Action, it was mistaken. No authority is cited therefor. The judgment in the First Contractor Action reserved no jurisdiction to the trial court in those proceedings but was rather a final

judgment. The appellate decision in *Zurn, supra,* 69 Cal.App.3d 798, has long since become final. Thus, the Contractor's First Action is no longer pending to serve as a basis of jurisdiction for the superior court for any purpose. (See *Mason & Associates, Inc.* v. *Guarantee Sav. & Loan Assn.* (1969) 269 Cal.App.2d 132, 133-134 [74 Cal.Rptr. 669]; Code Civ. Proc., § 1049.)

The Second Contractor Action is still alive. In this case Contractor again seeks the money damages on the first four counts that were dealt with in the First Contractor Action; however, the final judgment as to them in the First Contractor Action was in the nature of a declaratory relief judgment describing how they should be reevaluated in the subsequent State Engineer's hearing.

Respondent raises numerous questions concerning the doctrines of res judicata, law of the case, splitting causes of action, collateral estoppel and the one judgment rule. We agree with appellant that these questions are not relevant to the decision on the narrow issue before this court—whether or not the trial court erred in refusing to appoint an arbitrator in Contractor's Third Action. Such issues will require further consideration in the progress of Contractor's Second Action as will the determination of whether and to what extent that action is impacted by the *Graham* decision. It is in Contractor's Second Action that we find its adequate remedy at law.

Finally, if the executive order were interpreted to require the Director to offer arbitration to appellant (an interpretation which we reject), the original mandamus petition (Contractor's Third Action) would have been the proper judicial procedure to compel the Director to do his duty. (Code Civ. Proc., § 1085.)

For the foregoing reasons, the judgment is affirmed.

Files, P. J., and Woods, J., concurred.

A petition for a rehearing was denied January 14, 1982, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1982. Bird, C. J., was of the opinion that the petition should be granted.