208 B.R. 178 (1997)
In re SOUTHERN CALIFORNIA PLASTICS, INC., Debtor.
Lawrence A. DIAMANT, Chapter 7 Trustee, Appellant,
v.
Vartain KASPARIAN, Appellee.
BAP No. CC-96-1647-MCMEJ, Bankruptcy No. SV 92-40592-AG.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted March 19, 1997.
Decided April 25, 1997.
Damon G. Saltzburg, Saltzburg, Ray & Bergman, L.L.P., Los Angeles, CA, for Lawrence A. Diamant, Trustee.
Before: McKEAG[1], MEYERS, and JONES, Bankruptcy Judges.
McKEAG, Bankruptcy Judge:
Lawrence A. Diamant, in his capacity as a Chapter 7 trustee (the "Trustee"), has appealed the bankruptcy court order overruling his objection to a claim filed by creditor Vartan Kasparian ("Kasparian"). The bankruptcy court ruled that Kasparian's claim should be allowed as a secured obligation in a bankruptcy filed by Southern California Plastics, Inc. (the "Debtor"). We affirm.

STATEMENT OF FACTS
In 1991, Kasparian entered into a written contract with the Debtor to purchase certain products and equipment. The Debtor did not deliver the items purchased although Kasparian had paid a portion of the purchase price. On November 22, 1991, Kasparian filed an action in Los Angeles County Superior Court against the Debtor and its principals (the "State Court Action"), based on breach of contract, fraud, and rescission theories.
In the State Court Action, Kasparian sought and obtained a prejudgment writ of attachment against the Debtor, which was issued on February 13, 1992. On February 27, 1992, Kasparian filed a notice of attachment lien (the "Attachment Lien") with the California Secretary of State. The Attachment Lien extends to "any property [of the Debtor] for which a method of levy is provided" and purportedly encumbers proceeds from the Debtor's bank accounts and a sale of its equipment and machinery. After the Debtor filed a voluntary Chapter 7 bankruptcy case on August 7, 1992, the State Court Action was closed.[2]
*180 Kasparian timely filed a proof of claim in the bankruptcy case in the amount of $127,870 for "goods sold" and "services performed" (the "Claim"). The Claim consists of a secured component in the amount of $27,870, based on the Attachment Lien, and an unsecured claim for $100,000. On May 19, 1995, the Trustee filed an objection to the Claim, alleging that it was supported by inadequate documentation. On July 5, 1995, the bankruptcy court entered an order disallowing the Claim in its entirety.
The bankruptcy court granted Kasparian's motion for reconsideration and scheduled an evidentiary hearing on the Trustee's objections to the Claim. In a Joint Pretrial Order, the parties agreed that the only issues before the bankruptcy court were: whether the Debtor owed $127,870 to Kasparian; whether Kasparian was a secured or unsecured creditor; and certain evidentiary/estoppel questions. Prior to trial, Kasparian withdrew his $100,000 claim and the Trustee stipulated to allowance of the Claim in the amount of $27,870, reserving only his objections to Kasparian's claimed security interest. Following the evidentiary hearing, the bankruptcy court concluded that Kasparian's claim was unsecured because the Attachment Lien had expired under California law and Kasparian had not sought relief from the automatic stay to extend it.
Kasparian filed a second motion for reconsideration, asserting that the bankruptcy court had not considered the impact of Bankruptcy Code section 108(c), which extends or suspends certain deadlines. The court granted the motion for reconsideration, ruling that Kasparian's claim is secured. It concluded that section 108(c) tolled the automatic expiration of the Attachment Lien. Therefore, Kasparian's lien had not expired. It also decided that the issue of whether Kasparian should, or even could, proceed with the State Court Action was not relevant to its determination of his secured status. The Trustee appeals from this decision.

ISSUES
1. Whether the automatic expiration of a prejudgment attachment lien pursuant to California Code of Civil Procedure section 488.510 is tolled by 11 U.S.C. § 108(c).
2. Whether a prepetition attachment creditor has a secured claim for purposes of a bankruptcy case.

STANDARD OF REVIEW
The Trustee challenges the bankruptcy court's conclusions of law, which are reviewed de novo. In re United States Trustee (Sousa v. Miguel), 32 F.3d 1370, 1372 (9th Cir.1994). Questions of statutory interpretation are also reviewed de novo. In re Kim, 163 B.R. 157, 159 (9th Cir.BAP1994), aff'd 62 F.3d 1511 (9th Cir.1995).

DISCUSSION
The question is whether Kasparian has a secured claim against assets of the bankruptcy estate by virtue of his prejudgment attachment lien. The answer requires two different inquiries. First, we must decide whether the Attachment Lien automatically expired according to state law, or instead, whether 11 U.S.C. § 108(c) has extended its duration. Second, we must consider what, if anything, Kasparian was required to do to "perfect" his lien in order to have a secured claim in this bankruptcy.
1. The Effect of Bankruptcy Code section 108(c)
California Code of Civil Procedure ("CCP") section 488.510(a) provides that:
[A]ny attachment shall cease to be of any force or effect, and the property levied upon shall be released from the operation of the attachment, at the expiration of three years from the date of issuance of the writ of attachment under which the levy was made.
Section 488.510(b) permits a creditor to renew an attachment lien prior to its expiration. Because Kasparian obtained the Attachment Lien on February 13, 1992 and did *181 not seek a renewal under section 488.510(b), the Attachment Lien expired on February 13, 1995, three years after its issuance, unless the deadline was tolled or otherwise extended.
The bankruptcy court concluded that 11 U.S.C. § 108(c) extended the three-year deadline set forth in CCP § 488.510(a). Section 108(c) provides that:
[I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of 
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 722, 1201, or 1301 of this title, as the case may be, with respect to such claim.
Here, the Debtor's bankruptcy case remains open and the automatic stay is still in effect. See 11 U.S.C. § 362(c). If section 108(c)(2) applies, the three-year deadline to renew the Attachment lien or obtain a judgment has not expired.
The bankruptcy court considered the Ninth Circuit Court of Appeals decision, In re Hunters Run Limited Partnership, 875 F.2d 1425 (9th Cir.1989), to be controlling. We agree. In Hunters Run, the Ninth Circuit determined that a Washington mechanic's lien law, which required the creditor to file an action to foreclose the lien within a fixed period of time, was an "applicable nonbankruptcy law" for purposes of section 108(c). The Court concluded that because the automatic stay prevented the lienholder from filing a foreclosure suit, section 108(c) operated to toll the enforcement period of the mechanic's lien. Hunters Run expressly rejects any distinction between statutes of limitation and durational limits for purposes of section 108(c). Id. at 1427.
Under the principles set forth in Hunters Run, CCP § 488.510 is an "applicable nonbankruptcy law fix[ing] a period for continuing a civil action" within the meaning of section 108(c). In this case, Kasparian was required by CCP § 488.510(a) to either obtain a judgment or renew the Attachment Lien within three years. However, like the claimant in Hunters Run, he was prevented from doing so by the automatic stay. Under section 108(c)(2), Kasparian still has a thirty-day period after notice that the automatic stay has terminated or expired within which to renew his lien or obtain a judgment. Accordingly, the Trustee's argument that the Attachment Lien has expired fails.
2. Perfection of the Prejudgment Attachment Lien.
The bankruptcy court did not decide whether Kasparian was required to "perfect" his lien in order to have a secured claim in the bankruptcy case. We conclude that Kasparian must have a perfected lien to have an enforceable secured claim against the Debtor's assets.
The principle is generally recognized that liens, valid at the time a bankruptcy is filed, are preserved thereafter. See Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 737-39, 51 S.Ct. 270, 272, 75 L.Ed. 645 (1931); General Electric Credit Corp. v. Nardulli & Sons. Inc., 836 F.2d 184 (3rd Cir.1988); In re Halmar Distributors, Inc., 968 F.2d 121, 127 (1st Cir.1992). For example, a creditor whose Uniform Commercial Code financing statement expires after filing is still treated as a secured creditor. In re Catamount Dyers, Inc., 50 B.R. 788 (Bankr.D.Vt.1985).
A prejudgment attachment differs from a financing statement, however, because an attachment lien, under California law, is a prospective right only.[3] The attachment creditor has no right to the property levied upon unless and until it obtains a judgment. See Arcturus Mfg. Corp. v. Superior Court, *182 223 Cal.App.2d 187, 191-92, 35 Cal.Rptr. 502 (1963). This case presents the question of how that "unperfected" lien should be treated if a bankruptcy intervenes between the attachment and a judgment in state court.
Under California law, once an attachment creditor obtains a judgment, thus perfecting the attachment lien, the perfection relates back to the date the lien was created. In re Jenson, 980 F.2d 1254, 1259 (9th Cir.1992); In re Wind Power Systems, Inc., 841 F.2d 288, 293 (9th Cir.1988). In Wind Power, the Ninth Circuit concluded that the hypothetical ability of the creditor to perfect the lien by obtaining a judgment was sufficient to treat the lien as perfected on the date of creation for purposes of a trustee's avoidance action. Id. at 292-93.
The attachment creditor in Jenson filed a prepetition action against the debtor in federal district court. After filing bankruptcy, the debtor filed an adversary proceeding to avoid the writ of attachment, as well as an objection to the creditor's claim. All three matters were consolidated for hearing before the bankruptcy court, which entered judgment for the creditor. Relying on Wind Power, the Ninth Circuit treated the attachment creditor as secured in the bankruptcy. Jenson, 980 F.2d at 1258.
These decisions do not reach the precise question of what the attachment creditor must do to perfect the attachment lien once a bankruptcy is filed.[4] According to the Trustee, Kasparian was required to obtain relief from the stay and proceed to judgment in the State Court Action, rather than pursue his claim in the bankruptcy court. We conclude, however, that a judgment in state court is not the exclusive method for perfecting a prejudgment attachment lien for purposes of a bankruptcy. In Jenson, for example, the judgment issued after a consolidated proceeding in bankruptcy court involving a claims objection.
The Trustee's argument could lead to arbitrary results. A bankruptcy court could defeat an attachment lien by simply denying relief from the automatic stay. Hunters Run recognized this potential problem:
[The Debtor] also argues that [the lienholder] could have commenced his action to enforce his lien if he had only applied for relief from the automatic stay. This argument, however, assumes relief from the stay would have been granted. Moreover, it would require [the lienholder] to do something to perfect his lien which the Bankruptcy Code does not require. [The Debtor] cites no authority for this argument and we reject it.
Hunters Run, 875 F.2d at 1428.
The result urged by the Trustee would undermine the bankruptcy court's primary role in determining claims against the estate in order to achieve an orderly distribution. Forcing a creditor to litigate in state court runs counter to fundamental objectives of the automatic stay. These objectives include maintaining a status quo, protecting the estate against a multiplicity of lawsuits in various forums, and preserving the relative priorities of creditors, pending a distribution of estate assets. See Hillis Motors, Inc. v. Hawaii Automobile Dealers Ass'n, 997 F.2d 581, 585-86 (9th Cir.1993).
In this case, Kasparian filed a secured claim based on the same claims that had been asserted against the Debtor in the State Court Action. The Trustee originally objected to the substance and amount of the Claim, raising defenses that would have been raised in the underlying litigation. However, he later stipulated to allowance of the Claim in a reduced amount. For purposes of this bankruptcy, this allowed claim is the equivalent of a state court judgment as to the Debtor's liability to Kasparian. Kasparian has perfected his lien through procedures contemplated by the Bankruptcy Code.
The Trustee also asserted that Kasparian cannot renew the Attachment Lien or obtain a judgment in state court because the State Court Action is closed. Although our conclusion that Kasparian already has a perfected lien renders this argument moot, we *183 are not persuaded that Kasparian is prohibited from reopening the State Court Action. Cf. CCP § 579, permitting entry of multiple judgments in a single action.
The facts in the cases cited by the Trustee for the proposition that a state court action, once it is closed, is concluded for all purposes are readily distinguishable from the present case. McIntire v. Superior Court, 52 Cal. App.3d 717, 125 Cal.Rptr. 379 (1975), and Mason & Associates, Inc. v. Guarantee Savings & Loan Ass'n, 269 Cal.App.2d 132, 74 Cal.Rptr. 669 (1969), both deny attempts to substitute new defendants for "doe" defendants after the case was closed. In P.S. & S., Inc. v. Superior Court, 17 Cal.App.3d 354, 94 Cal.Rptr. 738 (1971), the court did not permit a party to bring a civil indemnification claim in a completed criminal prosecution. Finally, Pascal & Ludwig, Inc. v. California ex rel. Dept. of Water Resources, 127 Cal. App.3d 178, 179 Cal.Rptr. 403 (1981), raises res judicata questions in the context of successive suits between the same parties. Unlike the cases cited, Kasparian's claims against the Debtor were included in the original complaint in the State Court Action. Because these claims were never reduced to judgment or dismissed, they could be the subject of further proceedings in the State Court Action.

CONCLUSION
The bankruptcy court properly determined that Bankruptcy Code section 108(c)(2) tolls the three-year automatic expiration of a prejudgment attachment lien under California law. We further conclude that an attachment creditor is not required to obtain a state court judgment in order to perfect its lien against the assets of the estate it encumbers. In the bankruptcy context, an acceptable alternative method for perfection is allowance of the claim. Accordingly, the order of the bankruptcy court allowing Kasparian's claim as a secured claim is AFFIRMED.
NOTES
[1] The Honorable Jane Dickson McKeag, Bankruptcy Judge for the Eastern District of California, sitting by designation.
[2] The record is not clear regarding the disposition of the State Court Action. As part of the bankruptcy court proceedings, the parties stipulated that Kasparian "pursued" the action against the Debtor's principals and the case was closed. During oral argument, counsel for the Trustee represented that a judgment had been entered against one of the principals and the other obtained a nonsuit.
[3] In bankruptcy, the extent and validity of liens are determined according to state law. See McKenzie v. Irving Trust Co., 323 U.S. 365, 369-72, 65 S.Ct. 405, 408, 89 L.Ed. 305 (1945); In re Copper King Inn. Inc., 918 F.2d 1404 (9th Cir. 1990).
[4] Wind Power suggests in dicta that the attachment creditor could proceed to judgment in the underlying action. Wind Power, 841 F.2d at 293.