In re: **SOUTHERN CALIFORNIA PLASTICS, INC., Debtor.**

**Lawrence A. Diamant, Chapter 7 Trustee, Appellant,**

v.

**Vartan Kasparian, Appellee.**

No. 97–55874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Decided Jan. 20, 1999.

---

Damon G. Saltzburg, Saltzburg, Ray & Bergman, Los Angeles, California, for the Appellant.

John J. Jamgotchian, Woodland Hills, California, for the Appellee.

Before: D.W. NELSON, PAMELA ANN RYMER, and T.G. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellant Lawrence A. Diamant ("Trustee") appeals the decision of the Bankruptcy Appellate Panel concluding that Vartan Kasparian's allowed claim is secure. Kasparian obtained a prejudgment attachment lien against the debtor's property pursuant to California Civil Procedure Code § 488.500. Before Kasparian could proceed to judgment, the debtor filed for bankruptcy protection. The bankruptcy court allowed Kasparian's claim as secured, and the BAP affirmed. The Trustee argues that Kasparian's claim is unsecured because (1) the attachment lien was unperfected because an allowance of a

claim, in contrast to a judgment, cannot perfect an attachment lien and (2) Kasparian cannot perfect the lien because the underlying state court action is closed. We reverse and remand.

### Facts and Procedural History

In 1991, Kasparian and the debtor entered into a written contract for Kasparian to purchase particular products and equipment. *See Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)*, 208 B.R. 178, 179 (9th Cir.BAP 1997). Despite Kasparian paying part of the purchase price, the debtor did not deliver the items. *See id.* Kasparian filed an action against the debtor and its principals in state court on November 22, 1991. *See id.* Kasparian obtained a prejudgment writ of attachment against the debtor on February 13, 1992, and filed a notice of attachment with the California Secretary of State creating an attachment lien on February 27, 1992. *See* Cal.Civ.Proc.Code § 488.500; *Kasparian,* 208 B.R. at 179. After the debtor filed a voluntary Chapter 7 bankruptcy case on August 7, 1992, Kasparian proceeded to judgment in the state court action against one of the debtor's principals and a nonsuit was filed against Kasparian as to the other principal. *See id.*

Kasparian filed a timely proof of claim in the bankruptcy case; his claim included a secured $27,870 claim based on the attachment lien and an unsecured $100,000 claim. *See id.* at 180. The bankruptcy court disallowed the entire claim on July 5, 1995. *See id.* The bankruptcy court then granted Kasparian's motion for reconsideration and scheduled an evidentiary hearing. The parties agreed through a Joint Pretrial Order that the only issues were "whether the Debtor owed $127,870 to Kasparian; whether Kasparian was a secured or unsecured creditor; and certain evidentiary/estoppel questions." *Id.* The pretrial order also stipulated that the underlying state court action was closed. Kasparian withdrew the unsecured $100,000 claim and the Trustee stipulated to allow the $27,870 claim, reserving the question of whether it was secured. *See id.* After the evidentiary hearing, the bankruptcy court held that Kasparian's claim had expired

pursuant to California Civil Procedure Code § 488.510. *See id.*

After Kasparian filed a second motion for reconsideration, the bankruptcy court determined that 11 U.S.C. § 108(c) tolled the prejudgment attachment lien's automatic expiration and that the lien therefore had not expired. *See id.* The bankruptcy court further determined that the lien's secured status did not depend on whether Kasparian could proceed with the state court action. *See id.* The Trustee appealed to the Bankruptcy Appellate Panel. *See id.*

The BAP affirmed. *See id.* It held that: (1) 11 U.S.C. § 108(c) applied to extend the life of the lien, *see id.* at 180–81; (2) in the bankruptcy context, an attachment lien creditor need not obtain a judgment to perfect its lien because obtaining an allowance of claim is sufficient, *see id.* at 181–82; and (3) the closing of the state court action, whatever that entailed, was a moot issue in light of the holding that the allowance of the claim perfected the lien, *see id.* at 182–83. The Trustee timely appeals.

### Standard of Review

■ This Court independently reviews the bankruptcy court's rulings on appeal from the BAP. *See Weisberg v. Shearson Lehman Bros., Inc. (In re Weisberg )*, 136 F.3d 655, 657 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 72, 142 L.Ed.2d 56 (1998). We review the bankruptcy court's legal conclusions de novo and findings of fact for clear error. *See Trust Corp. of Mont. v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1406 (9th Cir.1990).

### Discussion

This case presents us with the question of whether an allowance of a claim is an acceptable alternative method, in the bankruptcy context, for perfection of an attachment lien. If it is not, we must decide whether the Trustee's asserted closure of the underlying state court action in this case prevents perfection of the lien.

## I

Under California law, certain creditors may obtain a prejudgment writ of attachment against property of the debtor by establishing the probable validity of their claims. *See* Cal.Civ.Proc.Code §§ 484.090, 485.220, 486.020. An attachment lien is created when the creditor files a notice of attachment or otherwise levies on the property. *See* Cal.Civ.Proc.Code § 488.500(a). This lien has priority over subsequent liens. *See* Cal.Civ.Proc.Code § 488.500(b). Unlike the holder of a security interest, however, the attachment creditor has no right to proceed against the property until after the creditor obtains a judgment. *See Arcturus Mfg. Corp. v. Superior Court,* 223 Cal.App.2d 187, 35 Cal. Rptr. 502, 505 (1964). "The attaching creditor obtains only a potential right or a contingent lien," *Puissegur v. Yarbrough,* 29 Cal.2d 409, 175 P.2d 830, 831 (1946), which is perfected or converted to a judgment lien upon judgment for the creditor, *Arcturus,* 35 Cal.Rptr. at 505; *cf.* Cal. Prob.Code § 9304 (describing the procedure for converting an attachment lien into a judgment lien in the context of a probate action). The priority of the judgment lien relates back to the date of the attachment lien. Thus, an attachment lien acts as a placemarker, ensuring the creditor's spot in the priority line until the creditor can obtain judgment.

The inchoate nature of an attachment lien, however, does not make it vulnerable to a trustee's strong arm powers. In *Wind Power Sys. v. Cannon Fin. Group, Inc. (In re Wind Power Sys.),* 841 F.2d 288 (9th Cir. 1988), we held that a trustee could not avoid an attachment lien though it was not perfected by judgment. Typically, a trustee, acting as a hypothetical lien creditor pursuant to 11 U.S.C. § 544, may avoid an unperfected security interest. *See id.* at 292. An attachment lien, however, differs from an unperfected interest; assuming that the attachment creditor reduces its claim to judgment, the lien cannot be defeated by a judicial creditor whose lien arose after the attachment. *See id.* at 292–93. Despite the uncertainty as to whether the attachment creditor will in fact obtain a judgment, allowing the trustee to avoid an attachment lien would "overturn a strong line of cases in this court allowing prepreference lien creditors to proceed to judgment." *Id.* And it would provide an "incentive for strategic bankruptcy filings which distort rights among creditors from what they would be outside bankruptcy proceedings." *Id.*

In *Federal Deposit Ins. Corp. v. Jenson (In re Jenson ),* 980 F.2d 1254 (9th Cir.1992), we held that the bankruptcy court may allow a prejudgment attachment lien as a secured claim when the bankruptcy court has entered judgment on the underlying deficiency claim. Before the debtor's filing in that case, the FDIC instigated a deficiency action in district court and obtained an attachment lien against the debtor's assets. *See id.* at 1255. Before the FDIC could obtain a judgment, the debtor petitioned for bankruptcy protection. *See id.* at 1256. The deficiency action was then referred to the bankruptcy court, and the bankruptcy court consolidated it with the debtor's objection to the FDIC's claim and the debtor's adversary action to avoid the attachment lien. *See id.* The bankruptcy court entered judgment for the FDIC in the deficiency action, and then later allowed the claim as secured, and directed payment pursuant to the attachment.

The debtor appealed and argued that an attachment lien unperfected by judgment before the petition date is insufficient to give rise to a secured claim. We held that this argument was foreclosed by *Wind Power. See id.* at 1258. We reasoned that the *Wind Power* court had "indicated that we would permit the attachment creditor to proceed to judgment in the underlying action and held that if the creditor prevailed, its perfection would relate back to the issuance of the writ of attachment." *Id.* Because the FDIC had obtained a judgment, the perfection of the attachment lien related back to the date the writ of attachment was issued. *See id.* at 1258–59. The bankruptcy court was therefore correct in allowing the FDIC's claim as secured. *See id.* at 1259.

The bankruptcy court in this case allowed Kasparian's claim as secured without deciding whether he needed to perfect the attachment lien. Other courts have avoided the issue by holding that once a prejudgment

attachment lien is recorded, it is perfected and the creditor has a secured claim. *See In re Giordano,* 188 B.R. 84, 87–89 (D.R.I.1995); *Quadrel Leasing De Puerto Rico, Inc. v. Carlos A. Rivera, Inc. (In re Carlos A. Rivera, Inc.),* 130 B.R. 377, 383 (D. Puerto Rico 1991). Based on *Jenson* and *Wind Power,* however, the BAP concluded that "Kasparian must have a perfected lien to have an enforceable secured claim against the Debtor's assets." 208 B.R. at 181. We agree.

■ Neither *Jenson* nor *Wind Power,* however, answers the resulting question: How may an attachment lien holder perfect its lien after a bankruptcy petition has been filed? Under state law, an attachment lien is perfected by obtaining judgment in the underlying action. *See Arcturus,* 35 Cal.Rptr. at 505. The *Jenson* creditor was able to secure a judgment in a consolidated bankruptcy proceeding when the deficiency action was in district court and the parties agreed to the reference. *See Jenson,* 980 F.2d at 1255–56, 1258–59. This situation allowed the *Jenson* creditor to avoid the issue of the automatic stay. Here, the bankruptcy court cannot try the underlying action, and Kasparian cannot secure a judgment in state court without obtaining relief from the stay. *See* 11 U.S.C. § 362; 28 U.S.C. §§ 1334, 1452.

Faced with this dilemma, the BAP concluded "that an attachment creditor is not required to obtain a state court judgment in order to perfect its lien against the assets of the estate it encumbers. In the bankruptcy context, an acceptable alternative method for perfection is allowance of the claim." *Kasparian,* 208 B.R. at 183. As Kasparian obtained a stipulated allowance of his claim, the BAP held, "[f]or purposes of this bankruptcy, this allowed claim is the equivalent of a state court judgment." *Id.* at 182. Thus, "Kasparian has perfected his lien through procedures contemplated by the Bankruptcy Code." *Id.*

To reach this conclusion, the BAP first reasoned that "a judgment in state court is not the exclusive method for perfecting a prejudgment attachment lien for purposes of bankruptcy." *Id.* As an example, the BAP cited *Jenson,* where "the judgment issued after a consolidated proceeding in bankrupt-

cy court." *Id.* Second, it dismissed the argument that an attachment lien holder must seek relief from the automatic stay and attempt to proceed to judgment in state court. This requirement, the BAP reasoned, "could lead to arbitrary results. A bankruptcy court could defeat an attachment lien by simply denying relief from the automatic stay." *Id.* Moreover, forcing the creditor to litigate in state court would undermine the objectives of the automatic stay. *See id.*

■ Although BAP's solution seems sensible, the BAP's reasoning collides with a long-standing rule: "State law controls the validity and effect of liens in the bankruptcy context." *In re Copper King Inn, Inc.,* 918 F.2d at 1407; *Tri–State Livestock Credit Corp. v. Ellsworth (In re Ellsworth),* 722 F.2d 1448, 1450 (9th Cir.1984). Attachment liens are solely creatures of state statutory law. *See Arcturus Mfg. Corp.,* 35 Cal.Rptr. at 503. California law requires a judgment for perfection. The BAP created a new method, not contemplated by California law, to convert an attachment lien to a judgment lien.

While the BAP relied on *Jenson* for the proposition that "a judgment in state court is not the exclusive method for perfecting a prejudgment attachment lien for purposes of bankruptcy," *Kasparian,* 208 B.R. at 182, it is not "a judgment in state court" that perfects an attachment lien but a *judgment in the underlying action,* whether that be in state or federal court.

■ Nonetheless, the BAP's conclusion may be justified if an allowance of claim were truly equivalent to obtaining a judgment. The procedure for allowance of a claim, however, is similar but not identical to that for obtaining a judgment. In the allowance process, the validity and legality of claims are determined by applicable nonbankruptcy law. *See e.g., Christison v. Norm Ross Co. (In re Eastview Estates II),* 713 F.2d 443, 447 (9th Cir.1983). A claim cannot be allowed if it is unenforceable under nonbankruptcy law. *See* 11 U.S.C. § 502(b)(1). The Trustee therefore may raise state law defenses to the claim. Unlike in a state court judgment, however, the proof of claim is *prima facie*

evidence of the validity of the claim. *See 4 Collier on Bankruptcy* at ¶ 502.02[2][f] (15th ed., 1998). Although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity. *See id.* Additionally, because the allowance of a claim is a contested matter, the proceeding is before the bench not a jury.

 Because of these differences, we hold that an allowance of claim is not equivalent to a judgment for purposes of perfecting an attachment lien. Attachment liens "can be created and continue to exist only in the cases and to the extent to which the [California] Legislature by statutory enactment has authorized their creation and continued existence." *Arcturus Mfg. Corp.*, 35 Cal.Rptr. at 503. Because attachment is a "harsh remedy," as the debtor loses some control of its property without the protection of a full adjudication, "the provisions related thereto should be strictly construed." *United States Liab. Ins. Co. v. Superior Court*, 252 Cal. App.2d 557, 60 Cal.Rptr. 723, 725 (1967) (citations omitted). One of the protections for the debtor built into the process is that the attachment creditor cannot proceed against the attached property until a judgment, with all of its procedural protections, is obtained. The BAP's solution upsets this balance and gives an advantage to the attachment creditor.

We recognize that the BAP's holding preserves many of the objectives of the automatic stay and that it results in a straightforward procedure for dealing with attachment liens. We also recognize that at times bankruptcy law may define what otherwise would be defined by state law. *See, e.g., California Dept. of Health Serv. v. Jensen (In re Jensen)*, 995 F.2d 925, 929–30 & n. 5 (9th Cir. 1993) (recognizing that, because of the Code's broad definition of "claim," bankruptcy law defines when a claim arises even though the claim is based on nonbankruptcy law). But it is axiomatic that, even in the bankruptcy context, state law governs the validity and extent of liens. Moreover, the Bankruptcy Code intends to preserve, to the extent possible, the state law rights possessed by parties outside of the bankruptcy context. *See*

*HAL, Inc. v. United States (In re Hal, Inc.)*, 122 F.3d 851, 852 (9th Cir.1997). Permitting an allowance of claim to substitute for a judgment perfecting an attachment lien undermines the rights and protections created by the California Legislature. We therefore reverse the BAP.

## II

 Because we hold that the allowance of Kasparian's claim did not perfect his attachment lien, we must turn to the question of whether the closing of the state court action prevents Kasparian from perfecting the lien. While agreeing that 11 U.S.C. § 108(c) would apply to extend the lifespan of Kasparian's lien, the Trustee argues that the lien is nonetheless dead because the state court action is closed. According to the Trustee, Kasparian cannot perfect the lien as he cannot reopen the state court case to obtain a judgment.

Although Kasparian obtained a judgment against one of the co-defendants and the other co-defendant secured a nonsuit, the state court apparently has not entered a judgment or a dismissal against the debtor. As the BAP recognized, California law permits state courts to enter judgment against one party while the action proceeds against others. *See Kasparian*, 208 B.R. at 182–83 (citing Cal.Civ.Proc.Code § 579). Moreover, we agree with the BAP that the cases relied upon by the Trustee are distinguishable. *See id.* at 183. Each deals with a situation in which a plaintiff tried to bring a new cause of action or add additional parties after judgment was entered on all claims and as to all parties. *See Pascal & Ludwig, Inc. v. California ex. rel. Dept. of Water Resources*, 127 Cal.App.3d 178, 179 Cal.Rptr. 403 (1981) (res judicata in successive suits); *McIntire v. Superior Court*, 52 Cal.App.3d 717, 125 Cal. Rptr. 379 (1975) (attempt to add defendant); *P.S. & S., Inc. v. Superior Court*, 17 Cal. App.3d 354, 94 Cal.Rptr. 738 (1971) (attempt to add claim); *Mason & Assoc., Inc. v. Guarantee Sav. & Loan Ass'n*, 269 Cal.App.2d 132, 74 Cal.Rptr. 669 (1969) (attempt to add defendant). That is not the case here.

Because we are convinced that Kasparian may not be absolutely precluded from pro-

ceeding to judgment on his claim against the debtor, we remand the case for further proceedings.

REVERSED AND REMANDED.