Filed 3/23/23  Outsource v. Horizon Communications Technologies CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| OUTSOURCE, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HORIZON COMMUNICATIONS TECHNOLOGIES, INC. et al.,<br><br>    Defendants;<br><br>SUNWEST BANK,<br><br>    Third Party Claimant and Respondent. | B314438<br><br>(Los Angeles County Super. Ct. No. 20STCV20862) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge. Reversed.

Parcells Law Firm and Dayton B. Parcells III for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Steven Casselberry, and Stephen Isbell for Third Party Claimant and Respondent.

\* \* \* \* \* \*

The trial court ruled that the funds held in a bank deposit account belonged to a third party possessing a security interest in those funds as collateral for its prior loans to the account holder rather than to a different creditor who had sued the account holder and had obtained a writ of attachment against the funds in the deposit account. This was error, so we reverse.

### FACTS AND PROCEDURAL BACKGROUND

I. Facts

A. *Horizon borrows money from Sunwest Bank*

On August 6, 2018, Horizon Communications Technologies, Inc. (Horizon) took out two small business loans—each in the amount of $1 million—from Sunwest Bank (Sunwest).

For each loan, Horizon executed a Commercial Security Agreement, in which Horizon granted Sunwest a "blanket" "security interest" in many of its assets as "[c]ollateral to secure the indebtedness." That collateral included Horizon's "deposit accounts."

On August 20, 2018, Sunwest filed a UCC financing statement as to each loan with the California Secretary of State.

2

**B.**     *Horizon defaults on payment plan with Outsource*

In February 2019, Horizon signed an "Agreement for Payment Plan" with Outsource, LLC (Outsource).  In that agreement, Horizon admitted that it owed Outsource $433,261.66 for temporary staffing services previously provided by Outsource pursuant to a 2010 contract between the two entities; Horizon agreed to pay a discounted amount of $265,190.63 pursuant to a weekly payment schedule; and Outsource agreed to accept this discounted amount in lieu of the full amount if Horizon timely made all scheduled payments.

Horizon stopped making the agreed-upon weekly payments in August 2019.

**II.     Procedural Background**

**A.     *Outsource sues and obtains a writ of attachment***

On June 3, 2020, Outsource sued Horizon and its owner (who had personally guaranteed Horizon's obligations in the original 2010 contract for services) for (1) breach of contract, (2) account stated, (3) open book accounts, and (4) common counts.  All of these claims stem from Horizon's failure to make the payments under the 2019 payment plan agreement.

On June 23, 2020, the trial court issued Outsource a right to attach order and writ of attachment.  The court ordered that, during the pendency of the litigation and so long as Outsource posted a $10,000 undertaking, Outsource had the right to attach Horizon's property—including "all money in [Horizon's] deposit accounts"—in the amount of $562,652.90.

On July 22, 2020, Outsource served a notice of attachment on Comerica Bank, where Horizon had a deposit account with a

3

balance of $193,973.41, and Comerica Bank remitted those funds to the levying officer (the local sheriff's department).

**B.    *Sunwest files a third party claim***

On August 3, 2020, Sunwest filed a third party claim with the levying officer asserting that (1) it held a security interest in Horizon's deposit account, and (2) its security interest was senior to Outsource's writ of attachment. In response, Outsource filed a petition in the trial court seeking a determination of the validity of Sunwest's claim, arguing that Sunwest's third party claim was "defective and ineffective" because Horizon had not defaulted on either of Sunwest's loans and Sunwest only had a security interest in the event of a default.

Almost one year later, and after further briefing, discovery, and a hearing, the trial court on July 14, 2021, ruled that Sunwest's third party claim "is valid and entitled to priority." The court found that Sunwest "has the senior lien" because it filed its UCC financing statements in 2018, which was before Outsource obtained a writ of attachment in 2020. The court also concluded that Outsource's focus on whether Horizon was in default on its loans with Sunwest "misse[d] 'the forest for the trees'" because the only "dispositive issue" was whether Sunwest had a "superior security interest," not whether Sunwest could foreclose on that interest due to a default.

**C.    *Appeal***

Outsource filed this timely appeal.

**DISCUSSION**

Outsource argues that the trial court erred in determining that Sunwest's security interest in the funds in Horizon's deposit account was superior to its lien that was created by the writ of attachment. By virtue of the writ of attachment issued by the

4

trial court, Outsource has a pre-judgment lien in the amount of the anticipated judgment in its pending lawsuit that reaches the funds contained in Horizon's deposit account.  (Code Civ. Proc., §§ 483.010, subd. (a) [requirements for issuance of writ of attachment], 484.010, 488.500, subd. (a), 488.455 [writ of attachment on deposit account]; *Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 532.)  California's Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.) creates a procedural mechanism by which a third party who is a stranger to a pending lawsuit and who has a security interest in the property subject to a pre-judgment lien (here, Sunwest) can initiate a claim with the levying officer that triggers the trial court that issued the writ of attachment to decide whether the third party's security interest is "superior" to the pre-judgment lien (and, if the court so decides, to prevent the plaintiff-creditor with that lien from having a superior entitlement to the funds at issue if a verdict is ultimately rendered in its favor).  (*Id.*, §§ 488.110, 720.210, subd. (a), 720.220, 720.390.)  This mechanism is a "summary proceeding" (*Cassel v. Kolb* (1999) 72 Cal.App.4th 568, 579-580 (*Cassel*)), and the third party has the initial burden of showing that it has a security interest superior to the pre-judgment lien (Code Civ. Proc., §§ 720.360, 720.210, subd. (a) [requiring proof of "superior" "security interest"]; cf. *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 307 (*Oxford Street Properties*) [once initial burden is met, burden shifts to lien creditor to rebut third party's showing of superiority]).  Under California law and as pertinent here, a third party's security interest in specific property is "superior" to a pre-judgment lien over that property if (1) the third party's security interest has "attached" to that property; and (2) the third party's

5

security interest is senior to the pre-judgment lien. (*Oxford Street Properties*, *supra*, 206 Cal.App.4th at p. 308.)

In evaluating a trial court's order granting or denying a third party's claim of a superior security interest, we review issues of law de novo and any factual findings for substantial evidence. (*Cassel*, *supra*, at p. 574; *Oxford Street Properties*, *supra*, 206 Cal.App.4th at p. 307.)

## I.    By the Time Outsource Obtained Its Pre-judgment Lien, Had Sunwest's Security Interest Attached to Horizon's Deposit Account at Comerica Bank?

A "security interest" is "an interest in" collateral, and "collateral" is any property that "secures payment or performance of an obligation." (Cal. U. Com. Code, §§ 1201, subd. (a)(35) [defining "security interest"], 9102, subd. (a)(12) [defining "collateral"].) A security interest "attaches" to collateral if (1) the secured party has provided value for its interest in the collateral, (2) the debtor has rights (or the power to transfer rights) in that collateral, and (3) the debtor has signed a security agreement that identifies the collateral. (*Id.*, § 9203, subds. (a) & (b), 9102, subd. (a)(7) [defining "authentication" as signature].)

In this case, the trial court correctly concluded that Horizon's deposit account was "collateral" and that Sunwest's security interest in that collateral had "attached" back in 2018 (and hence prior to the issuance of Outsource's pre-judgment lien in 2020). Horizon's deposit account at Comerica Bank secured Horizon's payment or performance of the two small business loans Sunwest made to Horizon. Further, Sunwest's security interest had attached to the deposit account back in 2018. That is because, as a result of Sunwest's loans and the Commercial Security Agreements, (1) Sunwest provided value (namely, the

6

two $1 million loans) for the deposit account serving as collateral for those loans, (2) Horizon had rights in its own deposit account, and (3) Horizon signed a Commercial Security Agreement for each loan that identified the deposit account as collateral.

Outsource resists this conclusion with two arguments.

First, Outsource argues that California Uniform Commercial Code section 9332, subdivision (b), entitles it to possession of the funds in Horizon's deposit account "free of [Sunwest's] security interests." Outsource is wrong. To be sure, that section provides that a "transferee of funds from a deposit account" takes "the funds free of a security interest" (Cal. U. Com. Code, § 9332, subd. (b)), and the term "transferee" has been interpreted broadly (*Orix Financial Services, Inc. v. Kovacs* (2008) 167 Cal.App.4th 242, 250). But even a broad definition of "transferee" does not reach a party—like Outsource—to whom funds were never actually transferred. Outsource obtained a writ of attachment and obtained a pre-judgment lien as to the funds in Horizon's deposit account (Code Civ. Proc., § 488.500, subd. (a)), but Sunwest's third party claim halted the *transfer* of those funds into Outsource's proverbial hands (and, indeed, a transfer of those funds could not in any event happen unless and until Outsource prevails in its lawsuit against Horizon (Code Civ. Proc., §§ 720.250, subd. (a) [levying officer may not execute writ after third party claim timely filed], 697.020; *Brun v. Evans* (1925) 197 Cal. 439, 442 [pre-judgment attachment lien merges into judgment lien]; *Anderson v. Schloesser* (1908) 153 Cal. 219, 222-223 ["The effect of levying an attachment against the property of the defendant was merely to create a lien on that property as security for any judgment that might be recovered"])).

Second, Outsource argues that Sunwest's security interest never attached to Horizon's deposit account because the plain language of the parties' security agreements specifies that no security interest attaches until Horizon *defaults* on Sunwest's loans. Again, Outsource is wrong. To be sure, "a security agreement is effective according to its terms." (Cal. U. Com. Code, § 9201, subd. (a).) However, the plain language of the security agreements here does not use default on the loan as a trigger for *attachment* of the security interest; instead, the agreements use default as the trigger for Sunwest's right to *possess* the collateral and to *execute* the rights of a secured creditor vis-à-vis secured collateral. (See generally Cal. U. Com. Code, § 9601 [enumerating rights of a secured party after debtor's default].)

## II.  Is Sunwest's Security Interest Senior to the Pre-judgment Lien?

The trial court erred in concluding that Sunwest's security interest in Horizon's deposit account was "senior" to Outsource's pre-judgment lien.

California law provides that the determination of whether a security interest that has attached to a deposit account in a bank is senior to a pre-judgment lien is a function—not of California law—but of "[t]he local law of the bank's jurisdiction." (Cal. U. Com. Code, § 9304, subd. (a).) Which jurisdiction is "the bank's jurisdiction" is defined, in order of preference, as (1) the jurisdiction expressly identified as the "bank's jurisdiction" in "an agreement between the bank and" the deposit account holder (*id.*, subd. (b)(1)); (2) the jurisdiction identified for choice-of-law purposes in such an agreement (*id.*, subd. (b)(2)); (3) the jurisdiction identified in such an agreement as the location where

8

the deposit account is maintained (*id.*, subd. (b)(3)); (4) the office identified in the bank's account statements as the office serving the account holder's account (*id.* subd. (b)(4)); or (5) the location of "the chief executive office of the bank" (*id.*, subd. (b)(5)).

Because Sunwest did not introduce the agreement between Comerica Bank and Horizon, did not introduce any account statements, and did not introduce any evidence on where Comerica Bank's chief executive office is located, we have no idea *which* jurisdiction is Comerica Bank's jurisdiction. This evidentiary void is fatal to Sunwest's third party claim. Without that information, which was Sunwest's burden—as the third party movant—to establish, we cannot determine which "local law" to apply to assess perfection and priority. Because "perfection of a security interest makes it enforceable against third parties and priority determines which of competing claims to [the deposit account] will take precedence" (*Oxford Street Properties*, *supra*, 206 Cal.App.4th at p. 308), we are unable to conclude that Sunwest met the governing standard for perfection and priority set by the unknown local law of Comerica Bank.

Even if we were to assume that California is Comerica Bank's "jurisdiction," Sunwest satisfied neither of the two pertinent methods of establishing the seniority of its security interest. Under California law, a third party with a security interest in collateral establishes the seniority of that security interest by showing that, prior to the time that the pre-judgment lien was created, either (a) the third party "perfected" its security interest in that collateral, or (b) the third party signed a "security agreement" *and* properly filed a UCC financing statement that both identify that collateral. (Cal. U. Com. Code, §§ 9317, subd.

9

(a)(2), 9203, subd. (b)(3)(A); *Oxford Street Properties*, *supra*, 206 Cal.App.4th at p. 308.)[1]

Sunwest did not establish that it ever perfected its security interest in Horizon's deposit account. Under California law, a security interest in a deposit account is perfected by the secured party's "control of the collateral." (Cal. U. Com. Code., §§ 9312, subd. (b)(1), 9314, subd. (a); see also Official Comments on the Cal. U. Com. Code foll. § 9104 ["when a deposit account is taken as original collateral, the only method of perfection is obtaining control"].) California law defines "control" as being when (1) the secured party *is* the bank where the deposit account is maintained, (2) the secured party becomes the bank's customer "with respect to the deposit account," or (3) the secured party, the account holder, and the bank have entered into a so-called "control agreement" that empowers the secured party to "direct[ the] disposition of funds in the deposit account without further consent by the" account holder. (Cal. U. Com. Code, §§ 9314, subd. (a), 9104, subd. (a).) Sunwest did not meet this standard. That is because Sunwest never established in the record before

---

1 Several other methods of determining the seniority of competing interests in a debtor's property exist, but do not apply here. Because a pre-judgment lien is necessarily unperfected (e.g., *Diamant v. Kaspaian (In re Southern California Plastics, Inc.)* (9th Cir. 1999) 165 F.3d 1243, 1246 (*Diamant*) [pre-judgment lien is a "potential" or "contingent" interest, dependent upon outcome of the yet-to-occur trial]), the rules for determining seniority between competing perfected interests are not pertinent. (Cal. U. Com. Code, §§ 9317, subd. (a)(1), 9322, subd. (a).) Because a pre-judgment lien is not a purchase money security interest, the rule for determining the seniority of that specific type of interest is also not pertinent. (*Id.*, § 9317, subds. (a)(2), (e).)

10

us the "control" required by California law: Sunwest is not Comerica Bank (the bank where Horizon maintains its deposit account); Sunwest did not become Comerica Bank's customer regarding Horizon's deposit account; and Sunwest never introduced a "control agreement" granting it power to dispose of the funds in Horizon's deposit account.

Sunwest at first blush seems to have satisfied the second pertinent method of establishing seniority because it has security agreements with Horizon and because it filed UCC financing statements in California, all of which identify the deposit account. But Sunwest did not establish that the UCC financing statements were *properly* filed. That is because, without knowing which jurisdiction is Comerica Bank's jurisdiction, we do not know whether the UCC financing statements filed in California were filed in the right place.[2]

In these respects, this case is indistinguishable from *Full Throttle Films, Inc. v. National Mobile Television, Inc.* (2009) 180 Cal.App.4th 1438 (*Full Throttle*). In that case, as here, a third party who had obtained a security interest in deposit accounts held by a bank filed a third party claim for priority over a creditor who had secured a pre-judgment writ of attachment over the same accounts. (*Id.* at p. 1440.) In that case, as here, there was no evidence of which jurisdiction was the bank's jurisdiction. (*Id.* at p. 1444.) And in that case, as here, the inability to know which jurisdiction's law to apply meant that a UCC financing statement filed in California was not properly filed (even though it was properly filed under California law). (*Ibid.*) Just as *Full*

---

2      Although Sunwest may in theory have covered all the bases by filing UCC financing statements in all 50 states, it has not introduced any evidence of that fact.

11

*Throttle* concluded that the third party's claim must be denied, so must we.

Sunwest resists this conclusion with what boils down to three arguments.

First, and as a procedural matter, Sunwest argues that we cannot consider whether its security interest is senior because Outsource did not raise the issue of seniority before the trial court (and instead focused on the lack of attachment and its own status as a "transferee" under California Uniform Commercial Code section 9332). Although Sunwest is correct that Outsource did not object to the seniority of Sunwest's security interest before the trial court, this is of no consequence because it was *Sunwest*'s burden to prove the seniority of its security interest; that burden exists whether or not anyone else objected to it. Sunwest responds that its burden did not include establishing seniority, but it is wrong: The Enforcement of Judgments Law plainly requires the third party to establish that its "claimed" "security interest" is "superior" to the pre-judgment lien (Code Civ. Proc., § 720.210, subd. (a)), and superiority under the California Uniform Commercial Code necessarily includes a showing of seniority.

Second, Sunwest argues that its filing of UCC financing statements perfected its security interest in Horizon's deposit account. Sunwest is wrong. Although the filing of a UCC financing statement is a sufficient method for perfecting security interests in many types of collateral (see, e.g., Cal. U. Com. Code, § 9312 [filing sufficient for "chattel paper, negotiable documents, instruments, or investment property"]; *Corona Fruits & Veggies Inc. v. Frozsun Foods, Inc.* (2006) 143 Cal.App.4th 319, 322 ["In California, the filing of a UCC-1 financing statement is generally

12

required to perfect a security interest . . .”]), California law—again, assuming California is Comerica Bank’s jurisdiction—explicitly erects a different method *for deposit accounts*, and hinges perfection of a security interest of such accounts upon control and control alone.  (Cal. U. Com. Code, §§ 9312, subd. (b)(1), 9314; *Royce v. Michael R. Needle, P.C.* (N.D.Ill. 2019) 381 F.Supp.3d 968, 982 [under analogous federal law, “distinction” between deposit accounts and other collateral “is critical”].)

Lastly, Sunwest argues that its security interest is senior—even if that interest is unperfected—because, pursuant to Code of Civil Procedure section 697.590, subdivision (b), a conflict between two unperfected interests in property is resolved in favor of the first one created; because, Sunwest continues, its security interest in Horizon’s deposit account was created in 2018, that security interest is senior to Outsource’s pre-judgment lien created in 2020.  The legal premise of Sunwest’s argument is incorrect.  Code of Civil Procedure section 697.590, subdivision (b), provides the governing rule when resolving a conflict between a “judgment lien” and a “conflicting security interest.”  But Outsource does not have a judgment lien; it has a pre-judgment lien by writ of attachment.  Thus, the pertinent governing rule is the one that resolves conflicts between a pre-judgment lien and a security interest.  That rule is supplied, as noted above, by California Uniform Commercial Code section 9317, subdivision (a)(2), which resolves conflicts between a “lien creditor” (which includes a creditor that has obtained a writ of attachment (Cal. U. Com. Code, § 9102, subd. (a)(52)(A); *Full Throttle*, *supra*, 180 Cal.App.4th at p. 1441)) and a “security interest” in favor of the secured party only if that security interest (1) is “perfected” or (2) is accompanied by a security agreement and a properly filed UCC

13

financing statement. (Cal. U. Com. Code, § 9317, subd. (a)(2).) This pertinent rule does not rest upon a simple inquiry into which unperfected security interest came first. Indeed, the first-in-time rule Sunwest urges would inevitably dictate that the pre-judgment lien would inevitably be junior because pre-judgment liens are *by definition* unperfected (see *In re Southern California Plastics, Inc.*, *supra*, 165 F.3d at p. 1246), and would always be created after the third party's unperfected security interest. We decline to adopt a rule that would eviscerate California Uniform Commercial Code section 9317, subdivision (a)(2). (Accord, *Tuolomne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [statutory interpretations that lead to absurd results or render words surplusage are to be avoided]; *People v. Bullard* (2020) 9 Cal.5th 94, 107 [same].)

In the interest of fairness, we sought supplemental briefing from the parties on the relevance of the "local law" requirement not squarely addressed in the parties' briefing. In its supplemental briefing, Sunwest concedes that the "local law" of Comerica Bank governs the determination of whether its security interest was perfected and has priority. However, Sunwest offers two further arguments. First, Sunwest suggested at oral argument that choice of law issues can be waived, and (echoing its argument about seniority of liens) urges that Outsource waived the ability to contest which law is the appropriate "local law" by not raising the issue before the trial court. But this argument ignores that *Sunwest* had the burden of proving the seniority of its security interest; Sunwest cannot now shift to Outsource the blame for Sunwest's own failure to prove its entitlement to relief under the proper "local law." Second, Sunwest asserts that the appropriate remedy is to remand the

14

matter to give Sunwest an opportunity to conduct discovery to obtain evidence establishing that governing local law. But Sunwest is not entitled to that second bite at the apple. As noted, Sunwest bore the burden of establishing that its security interest is senior and it failed to do so under the applicable statutes. What is more, Outsource's petition to determine the priority of the competing interests in Horizon's deposit account was pending for nearly one year, yet Sunwest never sought discovery. (See *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 182, fn. 32 [failure to request a continuance to conduct further discovery to oppose summary judgment waives the right to further discovery].)

## DISPOSITION

The order is reversed. Outsource is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

15